## S. D. KINGSLEY ET AL. v. HILLSIDE COAL & I. CO.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS

OF LACKAWANNA COUNTY.

Argued February 23, 1891—Decided January 4, 1892.

[To be reported.]

1. A grant of a mine-right under which the grantee is authorized to remove and sell, for his own benefit, all the coal contained in a tract described, is a sale of the coal and not a lease of it, even though the instrument by which the grant is made be drawn in the form of a lease: Hope's App., 29 W. N. 365; Montooth v. Gamble, 123 Pa. 240.
2. When a fair interpretation of the written agreement shows that a sale was intended by the parties, and a right to mine and remove all the coal is conferred by it, in express terms or by plain and necessary implication, it will constitute a sale, notwithstanding a term is created within which the coal is to be taken out.
3. When, by such a sale, the ownership of unopened coal has been severed from the ownership of the surface, the subsequent possession of the surface by the vendor and his successors in title is not hostile to the owner of the coal; nor will a delay by the latter, in opening up and taking actual possession of the coal, affect his title thereto.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 128 July Term 1890, Sup. Ct.; court below, No. 218 January Term 1887, C. P.

On December 18, 1886, S. D. Kingsley and others brought ejectment against the Hillside Coal & Iron Company, for the coal underlying certain lands in Blakely borough. The defendant pleaded not guilty.

At the trial, on June 5, 1888, the plaintiffs put in evidence the following chain of title to the property in dispute:

Warrant to Edward London for 400 acres of land in Providence district, Luzerne county, dated January 27, 1804. Survey, under and in pursuance of said warrant, of 355 acres 33 perches, accepted March 15, 1808. Patent, dated July 15, 1869, to Jefferson B. Kenyon, for 106 acres 45 perches and allowance, described as being part of a larger tract surveyed in

pursuance of a warrant granted to Edward London dated January 27, 1804; the patent reciting that the right of Edward London thereto had become vested in said J. B. Kenyon by virtue of sundry conveyances and assurances. The plaintiffs showed, further, that the land embraced in said patent was that described in the writ of ejectment issued in this case; that J. B. Kenyon, generally known as Burr Kenyon, went into possession of the land about 1840 and farmed it until his death about forty years later, and that the plaintiffs were his heirs. On cross-examination of some of plaintiffs' witnesses, it appeared that Isaac London was in possession immediately before Kenyon.

The defendant put in evidence the three following papers relative to the coal in question:

1. Agreement between Isaac London and Thomas Meredith dated October 1, 1828, whereby London leased to Meredith, his heirs, executors, etc., 230 acres of land, including that in question, for the term of one hundred years from date, upon the following stipulations:

"It being, however, clearly understood that the possession which the said Thomas acquires under this lease, shall extend only to the use of the land leased as aforesaid as a coal field; that is to say, the said Thomas shall have full right, power and possession to search for coal anywhere on the leased premises, in any manner he may think proper, to raise the coal when found from the beds at all times; to enter and carry away the coal in wagons, sleds or any vehicles, and to sell the same for his own benefit and profit; and also, that he shall have a right to occupy whatever land may be useful or necessary as coal yards, or for roads for transporting coal through the premises : these rights and privileges shall extend to the heirs, executors, administrators and assigns of the said Thomas, during the term aforesaid, and also, to his and their agents, engineers, laborers and workmen. It is also understood that in case it shall be either useful or necessary to make roads of any description through the leased premises, for the purpose of transporting the coal to market, it may be done, taking care to do the least possible damage to the land or the improvements; and in case it may prove necessary for the full enjoyment of the premises aforesaid as a coal field as aforesaid, then the said Isaac cove-

Statement of Facts.

nants and agrees to execute such further writings as counsel learned in the law may deem proper, at the expense of the said Thomas, his executors, administrators or assigns; and the said Thomas for himself, his heirs, executors and administrators, covenants, promises and agrees to pay the said Isaac on the first day of August next, the sum of one hundred and fifty dollars in manner following . . . . . and also an annual rent of one dollar, payable on the first day of October in each and every year. And in case the coal on the leased premises shall prove extensive and abundant, and of an average thickness of ten feet, then said Thomas, on these facts being satisfactorily proved, agrees to pay to the said Isaac the further sum of fifty dollars. It is also agreed that the said Isaac, or his heirs, so long as they shall reside on the leased premises, shall have a right to dig whatever coal they may want for their own use, but not to sell, so as not to interfere with the works of the said lessees : Provided always, nevertheless, that the said Thomas and his heirs, executors, or administrators, by indorsing twenty dollars on the contract aforesaid made by the said Isaac with the heirs of Samuel Meredith, deceased, at any time previous to the first day of August next, shall have full right and authority to declare this agreement and lease absolutely null and void, anything in this instrument of writing to the contrary notwithstanding." . . . .

At the foot of this instrument were memoranda of the receipt from Meredith of $150, " the purchase money named in the within agreement and lease," and $5, " being for five years rent in advance on the within lease." The instrument was recorded on August 24, 1829.

2. Agreement between Thomas Meredith and Isaac London dated December 10, 1838, recorded December 22, 1838, stipulating inter alia as follows :

" 1. That the clause in the article of agreement and lease, dated October 1, 1828, relative to the right of said London to dig coal for his own use, but not to sell, shall extend to such person or persons as he may sell to, but to no other.

" 2. That the clause in the said agreement and lease, relative to the annual rent of one dollar, shall be and is hereby declared null and void, as well as that clause by which the said Thomas is bound to pay to said Isaac the sum of fifty dollars, in case the

coal on the leased premises shall prove extensive and abundant and of an average thickness of ten feet. It being clearly understood that the residue of said agreement and lease shall be valid to all intents and purposes.

" 3. In consideration of the above releases in article second, the said Thomas has agreed to article first, and also agrees to take up and cancel a certain bond given by the said Isaac to Samuel Dickenson and others, for the purchase money of his farm. The said Thomas, also, further agrees, that the said Isaac may open a mine on the said leased premises, at his own expense and cost, and shall be allowed to sell three hundred tons of coal to pay the expenses thereof, but no more."

3. Deed from Isaac London to Thomas Meredith, dated December 10, 1838, recorded December 24, 1838, the material parts of which were as follows :

" Witnesseth, That the said Isaac, the party of the first part, for and in consideration of the sum of one hundred and fifty dollars to him in hand paid . . . . (and in further consideration of the annual sum or rent of one dollar, payable by the party of the second part as hereinafter provided), hath granted, bargained, sold, aliened, enfeoffed, released, conveyed and confirmed, and by these presents doth grant, bargain," etc., " unto the said party of the second part, to his heirs and assigns, all the land that he held or was possessed of on the first day of October, A. D. one thousand eight hundred twenty-eight, either by deed, article of agreement, or by any other title in said township of Blakely, county and state aforesaid, containing about two hundred and thirty acres, more or less, for the following intents and purposes, as expressed and set forth in an article of agreement or lease by and between the same parties hereto, bearing date the first day of October, A. D. one thousand eight hundred and twenty-eight, and recorded . . . . to wit: It being, however, clearly understood that the possession which the said Thomas acquires under this lease shall only extend to the use of the land leased as aforesaid as a coal field ; that is to say, the said Thomas shall have full right, power and possession to search for coal anywhere on the leased premises in any manner he may think proper; to raise the coal when found from the beds; at all times to enter and carry away the coal in wagons, sleds or any vehicles, and to sell the same for his own benefit and

profit; and also that he shall have a right to occupy whatever land may be useful or necessary as coal yards or for roads for the transporting coal through the premises; these rights and privileges shall extend to the heirs, executors, administrators and assigns of the said Thomas during the term aforesaid, which by reference to the article of agreement or lease aforementioned will be found to extend to one hundred years from the first day of October, A. D. 1828, and also to his and their agents, engineers, laborers and workmen. The said party of the second part, his heirs, executors, administrators and assigns, yielding and paying to the said party of the first part, his heirs, executors, administrators and assigns, the annual rent or sum of one dollar upon the first day of October of each year hereafter. It is also understood that in case it shall be either useful or necessary to make roads of any description through the leased premises, for the purpose of transporting coal to market, it may be done, taking care to do the least possible damage to the land or the improvements; and in case it may prove necessary for securing the full enjoyment of the premises aforesaid, then the said Isaac covenants and agrees to execute such further writing as counsel learned in the law may deem proper at the expense of said Thomas. To have and to hold the said coal field and privileges mentioned or intended so to be, in the said article of agreement of the first of October, A. D. one thousand eight hundred and twenty-eight, in part recited above, with the appurtenances, unto the said party of the second part, his heirs and assigns, to the only proper use, benefit and behoof of the said party of the second part, his heirs, assigns, engineers, laborers and workmen, for the interest and purposes and for the term mentioned in said part recited article of agreement or lease."

Then followed a covenant of general warranty of " the said coal field and privileges, hereditaments and premises, granted. and released, . . . . . unto the said party of the second part, his heirs and assigns, subject to the annual rent aforesaid, . . . . for all and singular the intents and purposes of this deed and the above in part recited article of agreement or lease, and to and for the full and complete termination and ending of the term of one hundred years, from the date of the said in part recited article of agreement aforesaid."

Statement of Facts.

The defendant put in evidence, also, records and testimony showing the following facts:

By various mesne conveyances, the title of Thomas Meredith, created by the three instruments aforesaid, became vested in the defendant. J. B. Kenyon, the plaintiffs' ancestor, went into possession of the land in question under a purchase thereof from Isaac London, the land being conveyed to him by the deed of Isaac London dated February 14, 1840, recorded April 6, 1840, and containing the following words: "Excepting and reserve of coal to Thomas Meredith." On August 11, 1860, Benjamin S. Bentley, then the holder of the Meredith title, filed a bill in equity against J. B. Kenyon, which, after setting out the agreement of October 1, 1828, between London and Meredith, averred that Meredith paid to London the $150 therein mentioned, and punctually paid the rent of one dollar per year up to December 10, 1838; that on December 10, 1838, Isaac London conveyed said premises to Meredith, a copy of the deed of that date being annexed to the bill; that the title thereto had become vested in the plaintiff, who was desirous of opening and mining said coal, but that the defendant therein denied the plaintiff's rights and resisted his claim; praying that the defendant be required to answer certain interrogatories touching the matters of fact averred in this bill, and that the court adjudicate and determine the rights of the parties, and grant the plaintiff such relief as he might require. After a hearing, apparently on bill and answer,* the court, on August 18, 1862, dismissed the bill, for the reason that it presented no case for chancery jurisdiction, the plaintiff's remedy being by action of ejectment. It was shown further that, on October 13, 1862, William Jessup, who had succeeded to the title of Benjamin S. Bentley, brought ejectment against Burr Kenyon for the coal now in question, and that a verdict was recovered by the plaintiff in said action and judgment entered thereon. To a writ of habere facias possessionem issued upon said judgment, the sheriff made return that he executed the same on April 3, 1868, by

---

* The purpose for which the record of the suit in equity was put in evidence by the defendant, was to show an admission of J. B. Kenyon made in his answer to the bill, that he claimed title under the deed from Isaac London to himself, dated February 14, 1840.

Charge of Court below.

delivery of possession to the plaintiff's agent. It further appeared that no mine-opening was ever made upon the surface of the land in question; that no attempt to exercise the right to mine the coal, under the grant from London to Meredith, was made until after April, 1868, but how long after that mining was commenced did not clearly appear; and that for some time prior to the trial the defendant was engaged in taking out the coal beneath said land, by means of subterranean workings extended into it from an adjoining property.

The defendant offered in evidence the depositions of certain deceased witnesses, taken in a proceeding in the Orphans' Court for the partition of the real estate of Edward London, deceased, to which Isaac London, who was his son, was a party, the depositions tending to show that Isaac London was in adverse possession of the land in question from about 1815 to 1836 or 1837.

Objected to, for the reason that the depositions were taken in a suit to which Burr Kenyon was not a party, nor upon the same subject matter, and not between the same parties, as the present action.

By the court: Objection overruled; evidence admitted; exception.[28]

In rebuttal, the plaintiffs presented testimony tending to show that the coal in dispute was not assessed separately, for purposes of taxation, in 1862, or in any year prior thereto.

The testimony being closed, the court, CONNOLLY, J., charged the jury in part as follows:

We feel constrained, at this juncture of the case, to assume the entire responsibility of this matter, and if we are wrong we will have an opportunity hereafter to correct the disposal of this case.

The plaintiffs in this case, as stated to you, are the heirs at law of J. Burr Kenyon, who purchased or obtained his title to this land from Isaac London about the year 1840. The evidence shows that prior to 1840, and for a great number of years prior thereto, Isaac London was in possession of and claimed the ownership of this land. A warrant was originally issued for this land by the commonwealth of Pennsylvania to Edward London, who was the father of Isaac London. The title of

Charge of Court below.

Isaac London in this land is not questioned by the plaintiffs in this case, nor is it questioned by the defendant; hence it must stand as the title to this land, if he had any title to it, in 1840. The grantee of Isaac London was J. Burr Kenyon, of whom the plaintiffs in this case are the heirs at law. .

For a number of years subsequent to 1840, J. Burr Kenyon was in the sole possession and control of this property. [Prior to 1840, there was a lease executed, I believe it was in 1828, a lease of coal underlying this land, with certain reservations and certain rentals, made by Isaac London to Thomas Meredith. Subsequent to that there were two other papers executed, a deed of further assurance, and another paper, on the tenth day of December, 1838, between Isaac London and Thomas Meredith. In our judgment these papers control the present action in this case ; that is, the construction which we place upon these papers governs and controls the present action of the plaintiffs against the defendant. And we hold that these papers, taken in connection with the paper executed between Isaac London and Thomas Meredith, on the first day of October, 1828, impel us to say to you as a matter of law that there can be no recovery on the part of the plaintiffs in this case.] [1] . .

The defendant in this case has requested us to charge you upon certain points, which we shall proceed to do, and give our answers thereto in writing :

2. The only title claimed by the plaintiffs in this case is title by adverse possession of the surface by Burr Kenyon.

Answer : This point we affirm.[3]

3. That, under the undisputed testimony in the case, Burr Kenyon bought and went into possession of the land overlying the coal in dispute, under Isaac London, by his deed of February 14, 1840, which contained an exception and reserve of coal to Thomas Meredith.

Answer : This point we affirm.

4. That, both parties claiming under Isaac London, his title must be considered perfect to the land in dispute.

Answer : This point we affirm.[4]

6. That by the lease from Isaac London to Thomas Meredith of 1828, and the deed of 1838, in evidence, the title to the coal became severed from the surface, and the possession by Kenyon of the surface of the land is not possession of the coal be-

Charge of Court below.

low it, so as to bar the right of Thomas Meredith, or the defendant claiming under him.

Answer: This point we affirm.[5]

7. That the lease of 1828 and the agreement and conveyance of 1838, from Isaac London to Thomas Meredith, are a grant of an interest in land, and not a mere license to take coal, and being on record before Burr Kenyon purchased of Isaac London, were notice to him (Kenyon) that the coal had been severed from the surface.

Answer: This point we affirm.[6]

8. That when the title to the coal has been severed from the surface, as in this case, the person in possession of the surface cannot gain title by the statute of limitations, to the coal, unless he has taken possession of the coal by opening the surface to it and continuously using the same for twenty-one years adversely to the owners of it; and, as Burr Kenyon never opened or mined any of the coal under the land conveyed to him by Isaac London, he gained no title to the same by his possession of the surface, and the plaintiffs only claiming as his heirs, are not entitled to recover.

Answer: This point we affirm.[7]

10. That, upon the whole evidence, the plaintiffs are not entitled to recover.

Answer: This point we affirm.[9]

The plaintiffs have submitted twenty-one points, and have requested us to charge you thereon:

6. That if the jury should find that J. B. Kenyon entered upon the land and took actual possession thereof in the spring of 1840, claimed, occupied and actually possessed the same as his own up to the year A. D. 1862, and that during all that time Thomas Meredith and those claiming under him did not search for coal, nor mine or dig any coal from said lands, or make any improvements or appliances thereon for that purpose, and did not offer to pay any rent to the said Kenyon pursuant to the aforesaid instruments of writing, and did not during the said time have the coal in question assessed to the said Meredith or those claiming under him, such acts of omission and non-user would be an abandonment of and work a forfeiture of all the rights which the said Thomas Meredith and those claiming under him ever had to the said coal by virtue of the said instruments of writing.

Charge of Court below.

Answer: This point we do not affirm.[14]

7. That if the jury should find that Thomas Meredith, or those claiming under him, have conveyed the coal in question and all the coal that is in the said land, to any other person or persons or corporation in fee-simple, such conveyance is a disaffirmance of the lessor's title and a cloud upon his title which forfeit all the rights, interest and estate that Thomas Meredith and those claiming under him ever had to the said coal by virtue of the said instruments of writing.

Answer : Thomas Meredith could convey no greater estate in the land than he had under the lease and conveyances to him by Isaac London; with this qualification we affirm this point.[15]

8. That the ejectment suit brought by William Jessup, claiming under Thomas Meredith, and one of the persons through whom the defendant claims under Thomas Meredith, for the absolute possession and ownership of the whole of the coal in dispute, was a disaffirmance of the title of J. B. Kenyon to the said coal, and works a forfeiture of all the rights and interests that the said Thomas Meredith, and those claiming under him, had in and to the said lands by virtue of the aforesaid instruments of writing.

Answer : This point we do not affirm.[16]

12. The suit of Benjamin S. Bentley against Burr Kenyon, in the Court of Common Pleas of Luzerne county, on the equity side of said court, to wit, of August Term, 1860, No. 3, was the proper remedy for the plaintiffs in that suit, for a redress of the wrong and injury therein complained of; that court had full jurisdiction of the subject matter set forth in the plaintiff's bill of complaint in that suit, and the final disposition of that suit is final and conclusive of the subject matter of that suit, while the decree or judgment in that case remains unreversed.

Answer : This point we do not affirm.[20]

18. The fact that Kenyon purchased an outstanding claim or title from Isaac London, does not in any manner affect, weaken or destroy any other title he had before the purchase was made or acquired after that purchase.

Answer: This point we cannot affirm ; we cannot find any evidence that he claims title through any other source than that derived from Isaac London.[24]

Arguments.

19. That the possession of the surface of land is the possession of all that is beneath such surface, so long as the actual possession and title to the surface and substrata are not separated.

Answer: Under the evidence we cannot affirm this point.[25]

22. That the statute of limitations never runs against the commonwealth of Pennsylvania.

Answer: We affirm this point, but do not think it is applicable under the evidence to this case.[26]

[With these remarks, gentlemen of the jury, we state to you that in our judgment, in our opinion, under the law and under the evidence in this case, we are obliged to charge you as a matter of law that you are to find in favor of the defendant.][2]

—The jury returned a verdict for the defendant, and judgment was entered thereon; whereupon the plaintiffs took this appeal, assigning for error, inter alia:

1, 2. The portions of the charge embraced in [ ] [1 2]

3–9. The answers to the defendant's points.[3 to 9]

14–26. The answers to the plaintiffs' points.[14 to 26]

28. The admission of the defendant's offer.[28]

*Mr. Samuel B. Price* (with him *Mr. W. G. Ward, Mr. G. S. Horn* and *Mr. Herman Osthaus*), for the appellants:

The court made a fundamental error in construing the three papers executed by Isaac London, as constituting an absolute sale of the coal to Thomas Meredith, and a complete separation in title of the coal and surface. They constituted a mere lease or license to take out coal for a fixed and definite period. The case is clearly distinguishable from Caldwell v. Fulton, 31 Pa. 475; Caldwell, v. Copeland, 37 Pa. 427; Armstrong v. Caldwell, 53 Pa. 287; Benson v. Miners' Bank, 20 Pa. 370; Sanderson v. Scranton City, 105 Pa. 469; and Del. etc. R. Co. v. Sanderson, 109 Pa. 583. It is to be governed by the law as laid down in such cases as Gloninger v. Coal Co., 55 Pa. 16; Funk v. Haldeman, 53 Pa. 243; Johnstown I. Co. v. Iron Co., 32 Pa. 241; Grubb v. Grubb, 74 Pa. 25; Grubb v. Grubb, 101 Pa. 11.

1. If the right to mine be limited to a term of years, the instrument is a lease: Delaware etc. R. Co. v. Sanderson, 109 Pa. 583; 5 Bac. Abr., 60, 433; Moore v. Miller, 8 Pa. 272;

Bussman v. Ganster, 72 Pa. 285; even though no periodical rent be reserved: Callen v. Hilty, 14 Pa. 286; Mitchell v. Commonwealth, 37 Pa. 187; Folden v. Commonwealth, 13 Neb. 328. The intention of the parties, appearing from the whole instrument, must govern its construction: 2 Shars. & B. L. Cas., 31. The intention of the parties, in the present instance, appears from the fact that they themselves called the instrument a lease, and from the language in which they defined their rights thereunder. Words of grant in a deed are controlled in their meaning by the evident purpose of the parties: Doe v. Wood, 2 B. & Ald. 724; Lord Mountjoy's Case, 1 And. 307; and the habendum may control their effect: Moss v. Sheldon, 3 W. & S. 160; Griffin v. Fellows, 81* Pa. 114.

2. If these London papers constitute a lease, then we claim that the lessee has forfeited all rights under it, by denial of the landlord's title and by non-user and abandonment. The bringing of the ejectment suit was a denial of the landlord's title which ipso facto forfeited the lease: 5 Bac. Abr., 668; Co. Litt., 251; Newman v. Rutter, 8 W. 51; Willison v. Willison, 3 Pet. 43; Peyton v. Stith, 5 Pet. 485; Wall v. Goodenough, 10 Ill. 41; Fortier v. Ballance, 16 Ill. 415; Walden v. Bodley, 14 Pet. 156; Taylor on L. & T., 386; Sheaffer v. Sheaffer, 37 Pa. 525; Hamilton v. Elliott, 5 S. & R. 374; Kenrick v. Smick, 7 W. & S. 41; Galloway v. Ogle, 2 Binn. 468; Graham v. Moore, 4 S. & R. 466; Jackson v. Harper, 5 Wend. 246; Sharp v. Kelley, 5 Den. 431; Rankin v. Tenbrook, 5 W. 386. So, also, the making of a conveyance in fee by the lessee, is such a disaffirmance of the lessor's title as works a forfeiture: Stump v. Findlay, 2 R. 168; Co. Litt., 233b.; Willison v. Watkins, 3 Pet. 43.

3. Again; the lease was forfeited by non-payment of rent. The bill in equity filed by Bentley practically admits that none was paid after December 10, 1838. It is true, one of the agreements made in 1838 seems to release the rental, but it releases only that reserved in the lease of 1828, and the grant of 1838 was made subject to the payment of rent. It is clear also that there was no attempt to exercise mining rights prior to the filing of the bill, and such non-user forfeited the lessee's rights: Brown v. Vandergrift, 80 Pa. 142; Munroe v. Armstrong, 96 Pa. 307. If, however, the instruments did not constitute a

lease, then they created nothing more than a license. The case at bar seems to be almost identical with Funk v. Haldeman, 53 Pa. 229. This being a license, subject to the payment of an annual rent, non-payment of the rent from 1838 to 1862 is a sufficient cause of forfeiture. The non-exercise of the licensee's privileges for the same period, together with Kenyon's open denial of their existence, put an end to the license: Erb v. Brown, 69 Pa. 216; Bombaugh v. Miller, 82 Pa. 203. All licenses are revocable: Woodward v. Seely, 11 Ill. 157 (50 Am. Dec. 445); Huff v. McCauley, 53 Pa. 206.

4. The admission of the depositions taken half a century ago in the Orphans' Court proceeding, in the estate of Edward London, was error. Without them the attempt to show a possessory title in Isaac London must fail; and hence, as the coal was never owned by him he could give Meredith no title thereto, and could not sever the coal from the surface. The court was not correct in saying that the plaintiffs claimed under Isaac London. They claimed by adverse possession of Burr Kenyon, and by a patent from the commonwealth. That adverse possession was sufficient to maintain ejectment, notwithstanding the intermediate adverse recovery after the twenty-one years possession had run: Pederick v. Searle, 5 S. &. R. 236; Jackson v. Dieffendorf, 3 Johns. 269. If the agreements between London and Meredith constituted a lease or a license, as we contend, then equity had jurisdiction of the bill filed by Bentley, and the final disposition of the equity suit was the final conclusion of the matter, as stated in our twelfth point.

*Mr. W. H. Jessup* (with him *Mr. W. H. Jessup, Jr., Mr. H. E. Hand, Mr. E. N. Willard* and *Mr. Everett Warren*), for the appellee:

Counsel cited: (1) As to the nature of the estate granted to Meredith: Hope's App., 29 W. N. 365; Harlan v. Coal & Nav. Co., 35 Pa. 287; Caldwell v. Fulton, 31 Pa. 475. (2) As to a forfeiture: 12 Am. & Eng. Encyc. of Law, 758; Brown v. Bragg, 22 Ind. 122. (3) As to abandonment: 1 Am. & Eng. Encyc. of Law, 1, 2; Tiedeman on Real Prop., § 739; Philadelphia v. Riddle, 25 Pa. 259; Armstrong v. Caldwell, 53 Pa. 287; Seaman v. Vawdrey, 16 Ves. 390; Smith v. Lloyd, 9 Exch. 562. (4) As to title to the coal by adverse possession

of surface: Caldwell v. Copeland, 37 Pa. 430; Sanderson v. Scranton City, 105 Pa. 469; Armstrong v. Caldwell, 53 Pa. 284; Barnes v. Mawson, 1 M. & S. 77. (5) That possession by one holding a recorded title is not notice of a claim in opposition thereto: Lance v. Gorman, 136 Pa. 200; Plumer v. Robertson, 6 S. & R. 179; Woods v. Farmere, 7 W. 382; Benson v. Miners' Bank, 20 Pa. 373. (6) As to the dismissal of the bill in equity upon the ground that ejectment was the proper remedy: North Penna. Coal Co. v. Snowden, 42 Pa. 488; Turner v. Reynolds, 23 Pa. 199; Caldwell v. Fulton, 31 Pa. 475; Bedford v. Dernlien, Buller's N. P., 106; Karns v. Tanner, 66 Pa. 297; Titusville I. Works' App., 77 Pa. 103; Christie's App,, 85 Pa. 466. (7) As to forfeiture by reason of a conveyance in fee by a tenant: McKee v. Pfout, 3 Dall. 486; Dunwoodie v. Reed, 3 S. & R. 445; Griffin v. Fellows, 81* Pa. 114.

OPINION, Mr. JUSTICE McCOLLUM:

The Hillside Coal & Iron Company, a domestic corporation, is in possession of and engaged in mining the coal field in dispute. It has the title thereto which Thomas Meredith acquired by his contract with Isaac London, on the first day of October, 1828, which was confirmed by a conveyance dated the tenth day of December, 1838. By an agreement in writing between London and Meredith, bearing even date with the conveyance, there was a modification of the original contract, including an extinguishment of the rent reserved in it. The appellants are the heirs of Burr Kenyon, who entered into possession of the land containing the coal field under a deed from Isaac London executed and delivered on the fourteenth day of February, 1840, in which the coal covered by the contract and conveyance to Meredith was excepted from the grant. Their contention is that Meredith was a lessee of the coal, and that his rights under the lease were lost by abandonment and non-payment of rent; that Kenyon's possession under the London deed was hostile to the Meredith title; and that the dismissal of the bill in equity filed by Benjamin S. Bentley against Burr Kenyon in the Court of Common Pleas of Luzerne county, on the eleventh day of August, 1860, was an adjudication against it, which, unreversed, is a bar to any claim founded upon it.

Isaac London's title to the coal field cannot be controverted in this action. The appellee is in possession of it under his grant to Meredith, and the appellants demand possession of it, and hold the land overlying it under his deed to their ancestor. As the respective titles of the parties litigant are dependent on the conveyance from him, our first inquiry relates to their construction, and the estates or interests acquired by them.

The original agreement between London and Meredith was acknowledged on the thirty-first of July, 1829, and recorded on the fourteenth of August following. It was called a lease, and it was stipulated therein that London should execute such further writings as counsel learned in the law might deem necessary to secure to Meredith, his heirs and assigns, the full enjoyment of the premises as a coal field. In fulfilment of this stipulation, London made to Meredith a deed, which was acknowledged on the fifteenth, and recorded on the twenty-fourth of December, 1838, being the conveyance to which we have already referred as in confirmation of the original contract. These instruments gave to Meredith, his heirs and assigns, the right to possession of the coal field for a term of one hundred years from the first of October, 1828, for the purpose of mining, removing, and selling coal, subject only to the payment of the nominal rent of one dollar a year, and to the agreement of Meredith that London or his heirs, while residing on the premises, should have the right to dig coal for their own use. In the agreement, of even date with the conveyance, the clause in the original contract " relative to the right of London to dig coal for his own use " was extended " to such person or persons as he might sell to, but to no others ; " and the provision in said contract for the payment of rent was declared null and void in consideration of the satisfaction of a certain judgment which Meredith and others held against London in the Court of Common Pleas of Luzerne county. When, therefore, Kenyon received possession of the premises under his deed from London, he was invested with the privilege, while he resided thereon, of digging coal there for his own use, and, subject only to the exercise of this privilege by him, Meredith had the exclusive right to the coal, with a definite term in which to mine and remove it.

The agreements between London and Meredith, and the

Opinion of the Court.

deed from the former to the latter, constituted a sale and conveyance of a coal field for a consideration paid, and a severance of the title thereto from the title to the overlying surface. They created an estate in Meredith, his heirs and assigns, which was distinctly excepted from the grant to Kenyon, and of which he had, by the record as well as by the exception, full notice. These instruments conferred on Meredith and his successors in title an exclusive right to mine and sell all the coal in the tract described, subject to the exercise by the grantor and his vendee of the privilege aforesaid. It is obvious that the parties to them intended a sale of the coal. The sum paid for the mine-right was the price of the coal in place, and in London's receipt on the first contract, it was called " purchase money." A grant of a mine-right under which the grantee is authorized to remove and sell, for his own benefit, all the coal contained in a tract described, is. a sale of the coal, and not a lease of it. It is contended, however, that the creation of a term within which the right is to be exercised clearly stamps the transaction as a lease. In Hope's App., 29 W. N. 365, the instrument was in form a lease for a term of ninety-nine years, and it was held to constitute a sale of the coal, with a definite term in which to mine and remove it. In Montooth v. Gamble, 123 Pa. 240, the agreement was regarded as a sale of coal, to be mined and removed within seven years, although it contained a provision that the coal unmined, if any, at the end of the term, should revert to the vendor. Where a fair interpretation of the written agreement shows that a sale was intended by the parties, and a right to mine and remove all the coal is conferred by it, in express terms or by plain and necessary implication, it will constitute a sale, notwithstanding a term is created within which the coal is to be taken out. We hold that the writings in this case constituted a sale of the coal to be mined within the term stated therein.

In this view of the case, Kenyon's possession was not hostile to the Meredith title, and no question of forfeiture arises. The dismissal of the bill in equity for want of jurisdiction was not an adjudication against that title, and the appellants take nothing by it in this contest. We think the court below committed no error in directing a verdict for the defendant.

Judgment affirmed.