**WALLACE et al. v. HOYT et al. (No. 6234.)**

(Court of Civil Appeals of Texas. Austin. Oct. 20, 1920.)

1. **Mines and minerals ⬅⟹49—Possession of surface after severance of minerals not adverse possession of minerals.**

After the oil, gas, and other minerals under a tract of land have been severed from the surface by reservation in a deed conveying the tract, possession of the surface without acknowledgement of reserved right to minerals is nevertheless not a possession of the minerals, and does not give title to the minerals by adverse possession.

2. **Mines and minerals ⬅⟹49—Possession of surface under deed not mentioning minerals previously severed not possession of minerals.**

The fact that persons in possession of a tract of land hold under deeds conveying the tract to them by metes and bounds description without any mention of the mineral rights thereunder does not make their possession of the surface a possession of the minerals thereunder, which had been previously severed by reservation in a deed conveying property to the possessors' remote grantor.

3. **Vendor and purchaser ⬅⟹231(3)—Recording deed reserving minerals gives constructive notice of reservation.**

Though the primary purpose of the registration statute may be to protect innocent purchasers for value, it is also intended to protect all whose rights are disclosed by the record, so that the record of a deed reserving minerals under the tract conveyed is constructive notice that the title to the minerals was vested in the grantor.

4. **Vendor and purchaser ⬅⟹230(1)—Owner has constructive notice of reservation in deed in chain of title.**

One who claims a tract of land under chain of title derived from the state has constructive notice of every fact disclosed by the chain of title, although he had not read the instruments constituting that chain, and therefore has constructive knowledge of reservation of mineral rights in a deed to a remote grantor.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Suit by W. E. Wallace and others against Edward C. Hoyt and others to determine the right to oil, gas, and other minerals under certain tracts of land. Judgment for defendants after trial without a jury, and plaintiffs appeal. Affirmed.

Critz & Woodward, of Coleman, for appellants.

A. B. Flanary, of Dallas, and Snodgrass, Dibrell & Snodgrass, of Coleman, for appellees.

KEY, C. J. This suit involves the rights of the respective parties to the oil, gas, and other mineral rights in and under certain tracts of land described in the pleadings. There was a nonjury trial, which resulted in a judgment for the defendants, and plaintiffs have appealed.

It seems that the plaintiffs were entitled to recover, unless their right to do so was defeated by a certain reservation contained in a deed to one of their remote grantors. The facts pertinent to that question are as follows:

On March 16, 1877, a tract of land, of which the lands in controversy are a part, was patented by the state to W. J. Hutchins, which patent was duly recorded in Coleman county, where the land is situated. On June 13, 1904, Maria Hoyt, Edward C. Hoyt, Theodor R. Hoyt, George S. Hoyt, and Walter S. Hoyt were the owners in fee simple of the land in controversy, under a regularly duly recorded chain of transfers from and under W. J. Hutchins, the patentee. By deed dated June 13, 1904, the Hoyts conveyed the tracts

of land here involved to W. E. Wallace, which deed contained the following stipulations and reservations:

"Excepting therefrom, and the same is not intended to be conveyed hereby, so much thereof as may have been heretofore taken from or granted for public road purposes, and subject to a lease for grazing purposes to D. E. Graston, which lease expires August 1, 1904.

"Excepting and reserving to said parties of the first part, their heirs and assigns forever, all minerals and mineral rights, oil, and gas being in, on, or under any of the lands hereinbefore described and hereby conveyed with the right to mine, bore for, and remove the same, and the right of ingress, egress, and regress, and the right to do such acts and to use and maintain on said premises such pipes, machinery, tools, implements, and structures or structure, as may be necessary or convenient or usual for the purpose of producing, making available, removing, or marketing such minerals, oil, and gas.

"To have and to hold the above granted and bargained premises unto the said party of the second part and his heirs and assigns forever, except as to said rights excepted and reserved as aforesaid, and said lease and land taken for road purposes as aforesaid.

"But it is further expressly agreed and stipulated that the vendor's lien is retained as aforesaid against the above-described premises, property, and improvements, and all the appurtenances thereto, until the hereinbefore described notes and all interest thereon are fully paid according to their tenor and face, effect, and reading, when this deed shall become absolute in and to the property hereby granted and conveyed, excepting the minerals, mineral rights, gas, and oil hereinbefore expressly excepted and reserved, together with all other rights hereinbefore reserved and excepted.

"And we do bind ourselves and our heirs, executors, and administrators to warrant and forever defend the title to said premises against the legal claims of all persons claiming or to claim the same, or any part thereof, by, through, or under us, and no further."

That deed was duly recorded in Coleman county July 1, 1904.

The Hoyts were the defendants in the court below, and are the appellees in this court, and are entitled to have the judgment awarding to them the mineral rights involved in the land affirmed, unless the facts show that their right thereto is barred by the five-year statute of limitation.

The plaintiffs in the court below, who are appellants in this court, claim under a chain of title from W. E. Wallace, who in December, 1904, conveyed the lands by metes and bounds to certain vendees, and they conveyed the same to others, and it thereby passed by regular chain of conveyances to the appellants, so that they are claiming under deeds conveying the lands by metes and bounds, without specifically mentioning mineral rights, and without any reservations concerning such rights, which deeds have been duly recorded in Coleman county for more than five years before the suit was instituted; and the plaintiffs and their vendors have paid all taxes due on the lands. Also it was shown that the plaintiffs and those under whom they claim by conveyances from and under W. E. Wallace had no actual knowledge of the reservation of mineral rights contained in the deed to Wallace, which deed, however, was duly recorded in Coleman county. It was also shown that, while appellants and those under whom they claim had held adverse possession of the lands, using them for residence, agricultural, and grazing purposes, they had made no effort, by mining or otherwise, to take actual physical possession of the minerals under the surface. It was further shown that the defendants, in like manner, had made no effort, by mining or otherwise, to take actual possession of the minerals referred to.

Appellants contend that they proved title in themselves under the five-year statute of limitation; their possession being held under deeds which contained no reservation of mineral rights. On the other hand, appellees present the contention that, the minerals in the lands in controversy having been severed from the surface by the reservation in the conveyance from the Hoyts to W. E. Wallace, of date June 13, 1904, no hostile title thereto under the statutes of limitation could be subsequently acquired by mere adverse possession of the surface of the lands; and, as the appellants never acquired nor held adverse possession of the minerals, they were properly denied recovery on their pleas of limitation.

[1] We sustain appellees' contention, and in support of that ruling cite the following authorities: Scott v. Laws, 185 Ky. 440, 215 S. W. 81; Northcut v. Church, 135 Tenn. 541, 188 S. W. 220, Ann. Cas. 1918B, 545; Gordon v. Park, 202 Mo. 236, 100 S. W. 621, 119 Am. St. Rep. 802; Murray v. Allard, 100 Tenn. 100, 43 S. W. 355, 39 L. R. A. 249, 66 Am. St. Rep. 740; Kentucky Block Cannel Coal Co. et al. v. Sewell et al., 1 A. L. R. 566; Manning v. Kansas T. Coal Co., 181 Mo. 359, 81 S. W. 140; Gordon v. Park, 219 Mo. 600, 117 S. W. 1163; Plant v. Humphreys, 66 W. Va. 88, 66 S. E. 94, 26 L. R. A. (N. S.) 558; Kiser v. McLean, 67 W. Va. 294, 67 S. E. 725, 140 Am. St. Rep. 948; Morison v. American Ass'n, 110 Va. 91, 65 S. E. 469; Brady v. Smith, 181 N. Y. 178, 73 N. E. 963, 106 Am. St. Rep. 531, 2 Ann. Cas. 636; 2 Corpus Juris, 147, § 258; 1 Cyc. 994; Thornton Oil & Gas (3d Ed.) § 336, p. 490; 18 R. C. L. §§ 84 and 85; Luse v. Boatman, 217 S. W. 1096.

The authorities cited teach the doctrine that the sale or reservation of mineral rights constitutes a severance as between the surface of the land and the minerals embedded underneath that surface, and therefore mere adverse possession and use of the surface does not constitute adverse possession and use of the minerals existing under the sur-

face. Upon that question we quote as follows from Manning v. Kansas & T. Coal Co., 181 Mo. 359, 81 S. W. 140:

"But, conceding that plaintiff had an interest in the land immediately before the execution and delivery of the deed by Stephen Gipson to Wardell on the 20th of May, 1887, for the coal and mineral products contained and lying under the land in question, and that before that time, and continuously down to the commencement of this suit, on August 24, 1899, he was in open, notorious, adverse, and undisputed possession of the surface of the land, yet the coal under the land was tne subject of a grant, and, having been severed from the surface by that deed (Wardell v. Watson, 93 Mo. 111, 5 S. W. 605; Snoddy v. Bolen, 122 Mo. 487, 24 S. W. 142, 25 S. W. 932, 24 L. R. A. 507; Armstrong v. Caldwell, 53 Pa. 284), such possession and occupancy did not constitute any possession or occupancy of the underlying coal; hence defendant's right to claim the coal had not become barred or extinguished by the statute of limitations at the time of the institution of this suit. Caldwell v. Copeland, 37 Pa. 427, 78 Am. Dec. 436, was a controversy between the claimant of underlying coal and the owner of the surface, who claimed to own the coal by adverse possession. The trial court charged the jury that the actual possession of the surface carried with it the actual possession downward · perpendicularly through all the. various strata. The Supreme Court said: 'This proposition would be unquestionable, if there had not been a severance of the title to the mine right from that of the surface by the deed of the 27th of May, 1831, Caldwell to Greer. But it is not true that after such a severance, whether by reservation or grant, the possession of the surface is possession of the underlying minerals. It is a common occurrence in mining districts not only that the ownership of the soil is vested in one person, and that of the mines in another, but there are frequently distinct ownerships of the minerals in the same land. Thus one person may be entitled to the iron ore, another to the limestone, a third to one seam or stratum of coal, and a fourth to a distinct stratum. Title to any of these minerals quite distinct from the title to the surface may be shown by documentary evidence, or, in the absence of such evidence, or in opposition to it, title to them may be made out by proof of possession and acts of ownership under the statute of limitations. The acts of ownership, however, which constitute possession and confer title, must be distinct from such as are exercised over the surface. But whether Caldwell conveyed to Greer the coal mines in his land, or only granted a license to enter and take coals, depended on the construction of the deed above referred to, of 27th May, 1831, and that was carefully considered and fully decided in the opinions reported in 7 Casey (475, 482). It was then held that the deed was not a license, but a conveyance of the fee of the mine; that it was a grant of land, and not of an incorporeal hereditament. That ruling is not questioned in the present case, and it is decisive against the plaintiff's action, so far as it is founded on a possession of the surface. For no length of possession of the surface, merely, could divest the title granted by that deed. Adverse possession of the mine by the owners of the surface for the statutory period would avail as title, but the case was not ruled below on this ground, and therefore we do not consider whether the evidence made out such possession in the plaintiff and those under whom he claims. On the ground assumed, that possession of the surface for more than 21 years was title to the mine, the court was clearly in error. And in the second assignment we think there was error. If there was no possession in Caldwell of the coal mine, as a coal mine, and independently of his possession of the surface, then there could be no question of adverse holding to submit to the jury.' Plummer v. Coal & Iron Co., 160 Pa. 483, 28 Atl. 853; Kingsley v. Hillside C. & I. Co., 144 Pa. 613, 23 Atl. 250; Armstrong v. Caldwell, 53 Pa. 289; Moreland v. Frick Coke Co., supra. · In the case at bar there is no pretense that plaintiff was ever in possession of the coal strata underlying the land, and independently of his possession of the surface, so that there was no adverse holding of it by him."

[2] Counsel for appellants concede that, if the controversy was between the grantors and the grantee in the deed containing the reservation, the ruling of the trial court might be upheld as correct. But they claim that, inasmuch as appellants showed adverse possession of the surface of the land, holding under deeds duly recorded for more than five years and the payment of all taxes, the appellants thereby sustained their plea of five-year limitation. That contention involves the further contention that a deed to the land by metes and bounds, no reference being specifically made to minerals, is a conveyance of all the minerals underneath the surface of the land, and that, when adverse possession of the surface is held under such a deed, it is also adverse possession of all the minerals, and can be asserted as such against one who sets up no claim to the surface, but to the minerals only. In Murray v. Allred, 100 Tenn. 100, 100 S. W. 355, 39 L. R. A. 249, 66 Am. St. Rep. 746, a case based upon a similar state of facts, the Supreme Court of Tennessee held that, in order to make a holding adverse to one who has reserved or had granted to him the mines and minerals and metals in and under the land held by another, there must appear to have been some denial of his right, or some assertion of the claim inconsistent with his right, which does not necessarily appear where a person uses the land merely for agricultural purposes, as such use is entirely consistent with the right of another to mine under the soil. Subsequently, in the case of McBurney v. Coal & Coke Co., 121 Tenn. 275, 118 S. W. 694, that decision was impliedly overruled, but in the still later case of Northcut v. Church, 135 Tenn. 541, 188 S. W. 220, Ann. Cas. 1918B, 545, the Supreme Court of Tennessee overruled the McBurney Case and reinstated the doctrine announced in Murray

v. Allred, and, referring to the latter case, the court said:

"The court sustained this assignment, basing its decision on the following principles: That the owner of real estate may sell the land to one man, the coal, iron, gas, or oil to another, or others, giving to each purchaser a deed in fee simple for his particular deposit or stratum, while he retains the surface for agricultural purposes precisely as he .held it before; the severance being complete for all legal and practical purposes, each separate layer or stratum becoming a subject of taxation, incumbrance, levy, or sale, precisely like the surface, and the possession of the soil by its owner for the purpose of tillage giving him no possession of the underlying mineral; that in order to make a holding adverse to one who has reserved, or had granted to him, minerals in place, there must appear to have been some denial of his right or assertion of a claim inconsistent therewith; and that the use of the surface for agricultural purposes is not the assertion of a right inconsistent with the right of the owner of minerals to mine under the surface for the purpose of extracting them. 100 Tenn. 100, 102, 119, 120, 43 S. W. 355, 39 L. R. A. 249, 66 Am. St. Rep. 740.

"Those principles are supported by a practically solid array of authorities in all the other states where similar questions have arisen, and also by the text-books. Westmoreland & Cambria Natural Gas Co. v. De Witt, 130 Pa. 235, 18 Atl. 724, 5 L. R. A. 731; Louisville & N. R. Co. v. Massey, 136 Ala. 156, 33 South. 896, 96 Am. St. Rep. 17; Gordon v. Park, 202 Mo. 236, 100 S. W. 621, 119 Am. St. Rep. 802; Catlin Coal Co. v. Lloyd, 180 Ill. 398, 54 N. E. 214, 72 Am. St. Rep. 216; Kiser v. McLean, 67 W. Va. 294, 67 S. E. 725, 140 Am. St. Rep. 948, and note, pp. 951-969; Wallace v. Elm Grove Coal Co., 58 W. Va. 449, 52 S. E. 485, 6 Ann. Cas. 140, and note; J. R. Crowe Coal & Mining Co. v. Atkinson, 85 Kan. 357, 116 Pac. 499, Ann. Cas. 1915D, 1196, and note; White on Mines and Mining, 32; Barringer & Adams on the Law of Mines and Mining, pp. 36, 59 and 60; 1 Cyc. 994, 995; 2 Corpus Juris, 147, § 258; 1 Ruling Case Law, pp. 738, 739."

Text-writers state the rule as follows:

"*When Possession of Surface Not Adverse.—* The common-law rule that whoever owns the surface of lands is entitled to all beneath the surface has but a limited application to mining property, and especially where there is a double ownership in the property, or an ownership of the surface by one party, with the title to the minerals in another. It has been held that this doctrine could not be invoked to vest the title to a vein or lode which extended into a claim on its downward dip, but had its top or apex outside the limits of the claim, and the owner of such claim could not acquire a title to the vein or lode extending into his claim by mere possession of the surface, even though the government had not granted such lode or vein to any one else. To constitute adverse possession of a mine or minerals the claimant must be in actual possession of the mine or minerals claimed and possession of the surface after a severance of the titles would not be such possession. An occupant of the sur-

face who has not himself taken possession of the minerals could not acquire a title thereto or .bar the right of the owner of the minerals on account of the latter's failure to exercise the right to dig the same, for he has not himself been in adverse possession of such mineral. But if such surface owner, after severance, should reduce the mineral to his possession, or if he should continue, for the statutory period, to dig and search for such mineral, he would thereby reduce the same to his possession, and such adverse possession would vest in him a perfect title to the minerals. The possession of the minerals would not be aided, however, by possession of the surface, and in order to vest a title thereto in the occupant he must remain in actual and exclusive continued and hostile possession thereof for the statutory period." White on Mines and Mining Remedies, p. 575.

"*Rule as to Oil and Gas.—*What is true of coal or other mineral is also true of oil and gas. It is not sufficient to show, where title by adverse possession is claimed by the surface owner as against the claimant or owner of the gas, that such surface owner has had possession for a period equal in length to the period required to establish title to land by adverse possession, where there has been a severance of the ownership of the oil and gas from land. * * *

"*Possession of Surface Not Adverse to Owner of Oil or Gas.—*Possession of the surface is not an adverse possession of the oil or gas beneath it where such oil or gas is owned by another, or rather where such other has a right to reduce it to possession. Such occupation, and even cultivation, is not even evidence of adverse enjoyment of the right to take oil or gas; and the mere nonuser for a long period—as 40 years —of the right to take it, will not extinguish it, although it may work a forfeiture. 'As the right was neither acquired nor evidenced by use, so we think it cannot be lost by misuse. And, as there was no adverse enjoyment to raise the presumption of a conveyance or release of it, the right of those holding the written title remains unimpaired.' (Said of coal beneath the surface. Arnold v. Stevens, 24 Pick. 106; Davis v. Clark, 2 Mont. 310; Kingsley v. Hillside Coal & Iron Co., 144 Pa. St. 613; 23 Atl. Rep. 250.) In speaking of adverse possession of coal beneath the surface of a tract of land, the Supreme Court of Pennsylvania used the following language: 'It is no doubt the general presumption that a party who has possession of the surface of land has possession of the subsoil also, because ordinarily the right to the surface is not severed from the right to the strata below the surface. But this presumption does not exist when these rights are severed. Each then becomes a distinct possession. In such a case the possession of the surface, following the right, is as distinct from the possession of the minerals or subsoil strata which have been severed in right as is the possession of one tract of land from that of another not in contact with it. Hence it is settled that, when by a convey-ance or reservation a separation has been made of the ownership of the surface from that of the underground minerals, the owner of the former can acquire no title by the statute of limitations to the minerals by his exclusive and

continual enjoyment of the surface. * * * ' '' Thornton's Law of Oil and Gas, pp. 489, 490.

[3] The instant case has another view which to our mind is entitled to some weight. The deed from the defendants to W. E. Wallace, under whom the plaintiffs claim, was duly placed on record, which record constituted constructive notice to the plaintiffs that title to the minerals had been reserved and was vested in the defendants. This being the case, we think appellees had the right to presume that the mere possession by appellants of the surface of the land and its use for residence, agricultural, and grazing purposes was not intended as a repudiation or denial of appellees' title to the minerals. While the primary purpose of our registration statute may be to protect innocent purchasers for value, it is also intended to protect those whose rights are disclosed by the record; and in this case the registration of the deed, reserving to appellees the minerals in the land, constituted constructive notice to appellants of appellees' rights by reason of that reservation.

[4] In addition to the constructive notice resulting from the registration of the deed containing the reservation of the mineral rights, it seems that appellants were charged with similar notice under another and different rule of law. In their petition they set up title in two ways, one by fee-simple title derived from the sovereignty of the soil, and the other by limitation; and proof shows that they have a regular chain of title emanating from the government and extending down to themselves, and the deed containing the reservation of the minerals is a link in that chain of title. It is a well-settled rule that one is charged with knowledge of every fact disclosed by his chain of title, although he may never have read the instruments constituting that chain, and never had any actual knowledge of their contents.

Therefore, appellants being charged by law with constructive notice of appellees' title to the minerals, if they desired to assert a hostile claim, they should have done more than use the land for residence, agricultural, and grazing purposes. Such use was not inconsistent with appellees' title to the minerals. Our conclusion is that the case was properly disposed of, and the judgment is affirmed.

Affirmed.