# MANNING, Appellant, v. KANSAS AND TEXAS COAL COMPANY.

### Division Two, May 10, 1904.

1. **JUDICIAL SALE: Payment: Possession: Presumption That Deed was Made.** Where the purchase money was paid by the purchaser for land sold by the sheriff in an attachment suit in 1867, and the purchaser thereafter paid taxes on the same and was in possession up to the time of his death in 1891, the presumption must be indulged that the sheriff made and delivered to him a deed therefor in accordance with the sale.

2. ———: ———: **Misdescription in Deed: Equitable Title.** Where the purchaser of land at an execution sale thereof in pursuance to a judgment in attachment, in which the land was properly described, paid the amount of his bid, a deed to him which did not correctly describe the land, conveyed to him the equitable interest of the attachment defendant.

3. **HUSBAND'S ACQUIRED INTEREST IN LAND: Inures to Wife: Limitations.** Where the husband's possession of land is by virtue of his marital rights, whatever title or interest he acquires by deed or otherwise during the existence of the marriage inures by operation of law to his wife. Therefore, the statute of limitation does not run in his favor against her or her heirs.

4. **LIMITATIONS: Curtesy: Cotenancy.** No right of entry is in any cotenant during the time a husband holds the land by the curtesy, and none of them during that time can perform any act that would set the statute of limitations to running against the others.

5. ———: **Possession Under Verbal Contract With Vendor.** The possession of a purchaser of land who enters into possession under a verbal contract with the owner that he is to have a deed when he pays for it, is not adverse or hostile as against the vendor until the purchase price is paid, and although continued for ten years it does not bar title.

6. ———: ———: **Sale by Vendor: Estoppel.** If the vendor, after the vendee has entered into possession of land under a verbal contract of purchase which is never performed, sells the land while such vendee is in possession, the vendee standing by and seeing such vendor sell it to a third party without objection

from him and by receiving a part of the purchase money, is thereafter estopped from claiming the property as against such third party and his grantees.

7. ———: **Severance of Surface From Coal Strata.** No length of possession of the surface can divest title acquired by deed to the coal and coal strata underlying the surface. The coal under the surface is the subject of a grant and if it has been severed from the surface by a deed, possession of the surface thereafter does not constitute any possession of the underlying coal. And hence adverse possession of the surface for any length of time does not bar the grantee's title to the underlying coal.

Appeal from Macon Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

AFFIRMED.

*R. S. Matthews, Otho F. Matthews* and *Ben Eli Guthrie* for appellant.

(1) Mrs. McCormick, since 1855, the date of Flore's making the mortgage to Wood, Bacon & Company, seems to have been in exclusive possession of all four forties to her death. She left in possession and mistress of the situation her daughter, Mrs. Manning, whose husband had furnished the money, apparently, to make all the substantial improvements. Mrs. Manning remained in possession of all four of the forties until her marriage with Stephen Gipson. Whatever possession he afterward had came by right of the marriage and followed immediately on the marriage. He was simply tenant by reason of his marital rights. Whatever title he acquired after the marriage must enure to the benefit of Mrs. Manning and her heirs. Hickman v. Link, 97 Mo. 493; McDonald v. Ruick, 139 Mo. 484; Cockrill v. Hutchinson, 135 Mo. 67; Hinters v. Hinters, 114 Mo. 26; Whitney v. Salter, 36 Minn. 103, 1 Am. St. 656; Dillinger v. Kelley, 84 Mo. 568; Picot v. Page, 26 Mo. 420. The presumption of law is that any purchase of a lien made by a tenant was made for the

landlord. Lansman v. Drahos, 10 Neb. 172; Pricket v. Ferguson, 45 Ark. 177; 1 Kerr on Real Property, sec. 598. (2) This doctrine applies to the northwest of the northeast of 35 as well as to the other three forties which Mrs. McCormick had entered. Flore drops out after 1855. He was the brother-in-law of Mrs. McCormick. She had, for years, been exercising ownership over this east forty, continued to do so, left her daughter in possession, who continued to exercise dominion over the forty, and her husband on the marriage took her possession, became her tenant and all rights he thereafter acquired enured to her. Her husband could not divest her maturing rights in the forty by anything he could do, and his duty was to mature those rights, and the law will let him do nothing else. Whatever expense he might be at in maturing those rights could but be matters of account to be charged in equity upon the land. They can by no means make him a title as against his wife and her heirs. Gipson's possession was his wife's possion. There can be no such thing as adverse possession between husband and wife. 9 Am. and Eng. Ency. of Law (1 Ed.), 804. (3) The tax deeds and other deeds to Gipson were wholly incompetent as tending to show title in him adverse to the plaintiff. Their legal effect was to place the title in Mrs. Gipson, which descended to plaintiff, and those deeds could therefore be only considered for that purpose. Allen v. DeGroodt, 98 Mo. 159; Fallan v. Chidester, 46 Iowa 588, 26 Am. 169. The taxes in several instances accrued after the marriage, and the husband should have kept the taxes paid. Bone v. Tyrrell, 113 Mo. 188. It being Gipson's duty to keep the taxes down, any sale for taxes could affect only his own interest and not that of his wife and her heirs. Ferguson v. Quinn (Tenn.), 33 L. R. A. 688. A tenant can not set up title against the landlord after he has taken possession of tenancy unless he first surrenders the landlord's tenancy held by him. Rogers v. Boynton, 57 Ala. 501; 12 Am. Eng. Ency. of Law (1 Ed),

703; Brown v. Keller, 32 Ill. 131; Moshier v. Reding, 12 Mich. 478; Reed v. Shelby, 6 Vt. 602; Newton v. Roe, 33 Ga. 163. (4) The attachment proceeding by E. S. Gipson against Province McCormick should not have been received as showing any adverse title in Stephen Gipson as against his wife and her heirs. The execution shows it was credited with three hundred and twenty-eight dollars. The execution shows no sale or attempted sale. There is no deed. There is no claim there ever was a deed. The parol evidence is that Mrs. Gipson herself settled this claim and the "land was turned back." Stephen Gipson never asserted any claim under this proceeding. The effect of the parol evidence is an effort to save the land, not for the husband, but for the wife and her heirs. (5) Plaintiff had been in the actual possession, renting and controlling this land since 1877, and his possession was notorious in the community and was notice to all purchasers. He had, in fact, been living on it at the time of the sale to Wardell for four years, and was at that time in actual occupancy in his own person. His possession was notice of his rights to all the world, and every purchaser took with notice of his rights, and Wardell and his grantees never acquired those rights by the deeds offered in evidence because Manning's possession was continuous up to the bringing of the suit. Wiggenborn v. Daniels, 149 Mo. 164.

*Dysart & Mitchell, W. C. Perry* and *Daniel B. Holmes* for respondent.

(1) The possession of a vendee is not adverse to his vendor, the purchase-money remaining unpaid and the title remaining in the vendor. This doctrine is elementary. Railroad v. Miller, 115 Mo. 158; Coal v. Roe, 39 Mo. 411; Long v. Stockyards, 107 Mo. 298; Mabary v. Dollarhide, 98 Mo. 198; Dollarhide v. Mabary, 125 Mo. 197; McQuiddy v. Ware, 67 Mo. 74. (2) If plain-

tiff knew of the sale of the coal to Wardell at the time, or assented to such sale, then he is estopped to claim the coal as against Wardell's grantees. The trial court found, and the evidence shows, that he both knew of the sale and assented thereto, and also that he received the purchase price thereof. This brings plaintiff clearly within the rule of estoppel. Alexander v. Railroad, 138 Mo. 464; Price v. Hallet, 138 Mo. 575; Skinner v. Stouse, 4 Mo. 93; Austin v. Loring, 63 Mo. 19; Slagel v. Murdock, 65 Mo. 522; Stevenson v. County, 65 Mo. 425; Longworth v. Aslin, 106 Mo. 155; Clyburn v. McLaughlin, 106 Mo. 521; Green v. Railroad, 82 Mo. 653; Bogart v. Bogart, 138 Mo. 419; Alexander v. Railroad, 138 Mo. 464; Fischer v. Siekmann, 125 Mo. 165. (3) Stephen Gipson owned this land under the statute of limitations. He purchased the same under two suits by attachment against Province McCormick and acquired at least a color of title in 1866 and 1868. He went into possession under his said purchase and exercised dominion and ownership over it, the same as over the Flore forty; he paid the taxes up to the time of his death, and rented it out to various tenants, and collected the rents; and finally, in 1885 or 1886, he sold it to plaintiff, including the Flore tract, for $1,600. These acts of ownership were unmistakable, and plaintiff himself conceded title in Stephen Gipson when he purchased the land and promised to pay him for it. (4) Plaintiff has never held this land adversely to the world so as to avail himself of the statute of limitations. One claiming title by limitation must show a possession, not only continuous, but adverse and hostile, and the claim must be to the entire tract or tracts, and not to a mere interest therein. And there must be a time, clearly and distinctly shown, when he first began to assert an adverse and hostile possession. Rodney v. McLaughlin, 97 Mo. 426; Blackaby v. Blackaby, 56 N. E. 1053; Warfield v. Lindell, 30 Mo. 272; Hunnewell v. Adams, 153 Mo. 440; Hunnewell v. Burchett, 152 Mo. 611; DeBarnardi v. Mc-

Elroy, 110 Mo. 659; Wilkerson v. Eilers, 114 Mo. 245; Bowman v. Lee, 48 Mo. 335. There may be two estates in a tract of land, one party owning the surface and another party owning the coal. The surface and the coal may be severed by deed or reservation. And in such case, the adverse possession of the surface is not an adverse possession of the coal. Moreland v. Coke Co., 170 Pa. St. 33; Lulay v. Barnes, 172 Pa. St. 331; Plumber v. Coal & Iron Co., 160 Pa. St. 483; Kingsley v. Coal & Iron Co., 144 Pa. St. 613; Armstrong v. Caldwell, 53 Pa. St. 284; Caldwell v. Copeland, 37 Pa. St. 427; Marvin v. Mining Co., 55 N. Y. 538; Arnold v. Stephens, 24 Pick. 106; Bogart v. Bogart, 138 Mo. 419; Alexander v. Railroad, 138 Mo. 464; Fischer v. Siekmann, 125 Mo. 165.

BURGESS, J.—This is an action to quiet and determine the title to one hundred and sixty acres of land in the county of Macon of which plaintiff claims to be owner in fee, and in the possession.

The answer is a general denial. It then admits that it may be true, as alleged by plaintiff, that he is in possession of the surface of the land in question, but denies that the plaintiff is in possession or ever has been in possession of the coal strata and other minerals underneath the surface of the said real estate. It alleges that it acquired title to the coal strata under the surface of the land and surface rights from one Thomas Wardell, to whom one Stephen Gipson, the then owner in fee to the land, conveyed by deed dated May 20, 1887. Other defenses relied upon were the statute of limitations, and laches upon the part of plaintiff instituting this suit, and estoppel by plaintiff by reason of his having received with knowledge a distributive share of the purchase-money paid to Gipson by Wardell for the land, which was part of Gibson's estate.

Plaintiff replied denying all new matter set up in the answer.

The land involved in this litigation is the north-west quarter of the northeast quarter, and the north half of the northwest quarter of section thirty-five, and the southwest quarter of the southeast quarter of section twenty-six, in township fifty-six, range fifteen, in Macon county. All of the land was entered by Lorena D. McCormick in 1837 and 1848, except the northwest quarter of the northeast quarter of section thirty-five, which was entered by James Flore in 1844.

Plaintiff claims to be the absolute owner of all the land, including all mineral lying thereunder, while defendant claims to be the absolute owner of the coal and other minerals beneath the surface, with certain surface rights incident and appurtenant to mining the coal.

The court found, adjudged and decreed as follows:

"The court further finds from the evidence that the plaintiff is the owner in fee of the surface of said lands as against the defendant, that is to say, all of the said lands except the coal, coal strata and other minerals and mineral products in and under the surface of the said lands, conveyed by Stephen Gipson to Thomas Wardell by deed dated the twentieth day of May, 1887, and recorded in the recorder's office of Macon county, Missouri, on the sixth day of October, 1887, in book 66 at page 400.

"The court further finds from the evidence, that the defendant is the owner in fee of all the coal, coal strata and other minerals and mineral products in and under the surface of the said described lands, as against the plaintiff, and that the defendant is entitled to the said coal, coal strata and other minerals and mineral products and all interest thereon as provided and contained in the said deed from Stephen Gipson to Thomas Wardell, dated the twentieth day of May, 1887, and recorded on the sixth day of October, 1887, in the recorder's office of Macon county, Missouri, book 66 at page 400.

"It is, therefore, ordered and adjudged and decreed

by the court that the said surface of the said real estate be, and the same is hereby, defined and adjudged to the plaintiff as against the defendant, to have and to hold the same from any right, title or interest of the defendant, subject only to the rights of the defendant as hereinafter provided and adjudged.

"It is further ordered, adjudged and decreed by the court that all the coal, coal strata and other minerals and mineral products in and under the surface of the said lands be, and the same are, hereby defined and adjudged to the defendant, as against the said plaintiff, to have and to hold the same forever against any and all right, title, claim or interest of the plaintiff thereto and all the right, title and interest thereon, as provided and conveyed in said deed from Stephen Gipson to Thomas Wardell dated the twentieth day of May, 1887, and recorded in the recorder's office of Macon county, Missouri, on the sixth day of October, 1887, in book 66 at page 400.

"It is further ordered and adjudged by the court that the defendant have and recover of the plaintiff the costs in this suit, and that execution issue therefor."

In due time plaintiff filed motions for new trial and in arrest, which were overruled and he appeals.

Plaintiff has no paper title to any of the land, and if he has any title to it, it is either by inheritance from his mother, Mrs. Stephen Gipson, and his deceased half brother, Dick Gipson, or under the statute of limitations.

It appears from the evidence that no title to the Flore forty ever vested in plaintiff's mother, hence he acquired no interest in that tract from her. The same is true with respect to three acres sold by Lorena D. McCormick to said Flore in the southwest corner of the forty in section twenty-six.

As to the Flore forty, the evidence shows that Stephen Gipson acquired a tax title to the same, and went into possession thereof as early as 1866, and held possession thereof and exercised ownership over the

same, and held the same adversely up to the time of his death in 1891. Neither Lorena D. McCormick nor any of her descendants ever made any claim to the Flore forty, and the evidence shows that Stephen Gipson's title to the said Flore forty was complete and perfect. The Flore forty is the one defendant was proceeding to mine and work.

As to the other three forties known as the McCormick tract, Lorena D. McCormick entered them in 1837 and 1848; she died in 1862, leaving three children and heirs, Marcus, Province, and plaintiff's mother; she made a will in December, 1861, by which she left all her property to her son, Marcus, known in the testimony as Mark, subject to the payment of debts. This will was recorded, but it does not appear that the same was ever probated. It was, however, offered in evidence by the plaintiff, without objection on the part of the defendant. Mark McCormick died without children or other descendants, leaving surviving him as his heirs, his brother, Province McCormick, and his sister, plaintiff's mother, Mrs. Gipson. Province McCormick afterwards died, leaving surviving him an only son and heir, Othello McCormick. The land was never partitioned between Province McCormick and plaintiff's mother, but remained in coparcenary.

Stephen Gipson, through whom defendant claims, married Jennie Manning, plaintiff's mother, on the nineteenth day of June, 1863. Some years later plaintiff's mother died, leaving several children by Stephen Gipson, whereupon Stephen Gipson became tenant by the curtesy to all the right, title and interest of the said wife in and to the said land. This was an estate for life in the whole. Stephen Gipson died April 12, 1891, on which day his tenancy by the curtesy expired.

Plaintiff's mother left surviving her as her heirs, subject to the curtesy and life estate of her husband, the following: The plaintiff, T. J. Manning, by her first husband, and Lou Gipson, Fannie Gipson and Dick

Gipson, by her last husband, Stephen Gipson. Each of these four children became entitled to an undivided one-fourth of their mother's one-half of said lands, subject to curtesy, and they held the same as cotenants in common, none of them having a right to the possession until after the death of Stephen Gipson, the life tenant by curtesy; afterwards, Dick died single and without children or descendants, and his interest in his mother's land descended to the father, brothers and sisters in equal parts, the half bloods taking a half interest and the whole bloods taking a whole interest.

Dick left surviving him his father, Stephen Gipson, plaintiff, Lou and Fannie, of the whole blood, and the ten children of Stephen Gipson by a former marriage, of the half blood. Lou Gipson married Winn and afterwards died, leaving a husband and children still living.

The plaintiff's mother never succeeded to more than one-half of the McCormick tract, her brother Province succeeding to the other half.

Plaintiff's mother left surviving her as her heirs, subject to the curtesy and life estate of her husband, the following: The plaintiff, T. J. Manning by her first husband and Lou Gipson, Fannie Gipson and Dick Gipson by her last husband, Stephen Gipson. Hence, the plaintiff could not take by inheritance exceeding the one-fourth of the one-half of the McCormick tract, subject to the curtesy of Stephen Gipson, and they held the same as cotenants in common, and none of them having the right to the possession until after the death of Stephen Gipson, the life tenant by curtesy, who died April 12, 1891.

When Dick died, his father, Stephen Gipson, inherited one whole share along with Dick's brothers and sisters. Province McCormick afterwards died, leaving children and descendants, who are not made parties to this suit.

Plaintiff married Bettie Gipson, a daughter of Stephen Gipson by his first wife, who inherited some-

thing by the death of her half brother, Dick Gipson, but she is not made a party to this suit.

In 1856 E. S. Gipson commenced a suit by attachment against Province McCormick and attached all the right, title and interest of Province McCormick in the said land except the southeast of the southwest quarter, section twenty-six, township fifty-seven, range fifteen, and obtained a judgment and sued out an execution thereon against the interest of Province McCormick in said land, and the same was sold under execution to satisfy the judgment obtained. The record shows that the said land was bid in by E. S. Gipson for and in the name of Stephen Gipson, and that the latter paid the amount of said bid, to-wit, the sum of $328, and the deed was ordered to be made to him. The record does not show that the deed was delivered to Stephen Gipson, but it does show that he bid in the property.

The record shows at least an equitable title to Province McCormick's right, title and interest to the land in question in Stephen Gipson.

In 1867 Virginia Gipson and Stephen Gipson brought a suit by attachment against Province McCormick and attached his interest in the said premises and a judgment was rendered in said attachment suit in favor of Virginia Gipson and Stephen Gipson against the said Province McCormick, and an execution was issued thereon and all the interest of the said defendant, Province McCormick, in the southwest quarter of the southeast quarter of section twenty-six, township fifty-seven, range fifteen, was sold under said execution, and the same was bid in by the said Stephen Gipson.

The record in said cause shows that the right land was attached and sold under execution, but the sheriff's deed misdescribes the land as in section two, instead of section twenty-six. This was evidently a mistake of the sheriff in the description, as the records in the case show that the right land was attached, advertised, sold

and bid in by Stephen Gipson, who paid the purchase price, and he acquired at least an equitable interest in the land sold.

The evidence tends to show that after Stephen Gipson purchased this land under the two tax suits, he took actual possession of the same and exercised control and dominion over the same, claiming it as his own and paying the taxes thereon ever since his purchase and up to the time of his death, leasing the same and collecting the rents.

In 1885 or 1886, Stephen Gipson sold the land in question, one hundred and sixty acres, including the Flore tract, to the plaintiff, Thomas J. Manning, by a verbal sale, at the price and sum of $1,600, a deed to be executed when the purchase-money was paid.

Plaintiff went into possession of the said premises under and at the time of his purchase, and in pursuance thereof, and the evidence tends to show that he has held possession of the same ever since, or up to the time of the commencement of this suit, but the evidence shows that he had never paid the purchase price up to the time of Stephen Gipson's death, or only a small portion of the same.

On the twentieth day of May, 1887, Stephen Gipson by warranty deed conveyed all the coal and other minerals under the lands in question to Thomas Wardell with surface privileges. Said deed was duly recorded October 6, 1887. This coal interest was afterwards willed to Thomas E. Wardell, and by him conveyed to Willard P. Heath on the second day of January, 1891, and by Williard P. Heath to the defendant, the Kansas & Texas Coal company, on the twenty-eighth day of April, 1891, all of which deeds were duly recorded in the office of the recorder of Macon county, Missouri.

The surface of this land was not sold to Wardell, only the coal and other minerals, with surface rights, and that is the extent of the defendant's claim in this suit.

The price at which the coal was sold was $2.50 per acre, making $400 for the one hundred and sixty acres.

At the time of the sale by Stephen Gipson to Thomas Wardell, the fact was known to the plaintiff, and he furthermore agreed to such sale, on the condition that he was to have the benefit of the purchase price. The sale was not consummated until after plaintiff's consent was obtained thereto.

This suit was not commenced until 1899. Plaintiff admits that he knew this coal was sold when he had an abstract of the title made, soon after Jasper Gipson was appointed curator of Stephen Gipson in 1890. The plaintiff delayed bringing his suit for nearly ten years after the death of Stephen Gipson and long after the death of Thomas Wardell.

Stephen Gipson had a stroke of paralysis in 1890 and had a curator of his estate appointed. He died in 1891 and an administrator was appointed. In both of these estates, inventories were filed, and the evidence shows that the plaintiff assisted in making and was fully acquainted with the two inventories. In both of these inventories it appeared that the coal under these premises had been sold to Thomas Wardell in 1887.

When Lorena D. McCormick died in 1862, the land owned by her and known as the McCormick tract would have descended to her three children, viz., Marcus, Province, and Jennie, plaintiff's mother, but for the fact that prior to her death she executed a will by which she left all of her property to her son, Marcus, known in the testimony as Mark, subject to the payment of her debts. While it does not appear from the record that this will was ever admitted to probate, it was found in the record of wills in the office of the probate court of Macon county, Missouri, recorded February 4, 1862, and was offered in evidence by plaintiff without objection on the part of the defendant, and must be held to have vested the title to the land in question in Marcus McCormick. Then when Marcus McCormick died without

children or other descendants, the land descended to his surviving brother Province McCormick, and his sister, plaintiff's mother, Mrs. Gipson. And as Province Mc-Cormick afterwards died, leaving a child, Othello McCormick, who is yet living, without the land ever having been partitioned between him, or his son, and Mrs. Gipson, plaintiff's mother, the title remained in them as coparceners.

When Mrs. Gipson died she left surviving her, her husband, Steve Gipson, and also the plaintiff, and three other children born of the marriage with Gipson, one of whom died childless, leaving as heirs his father, Steve Gipson, and two sisters of the whole blood and nine brothers and sisters of the half blood, being Steve Gipson's children by his first marriage, and the plaintiff by his mother's first marriage. It follows that plaintiff took by inheritance an undivided two-fifteenths interest, and the other ten Gipson children combined an undivided twenty-one sixtieths interest in the McCormick land, subject to the life estate by the curtesy of Steve Gipson, but acquired no interest whatever in the Flore land.

The purchase of the land by Stephen Gipson at the sheriff's sale in the attachment suits in no way increased or diminished the quantum of plaintiff's inheritance.

With respect to the sale of the land under the attachment suit in favor of E. S. Gipson against Province McCormick the record discloses that Stephen Gipson became the purchaser of all the right, title and interest of said McCormick in the land at the price and sum of $328, and while it does not appear from the record that a deed was ever made by the sheriff of the county and delivered to him for the land, as the sale was made in 1867, the purchase-money paid and the purchaser thereafter paid taxes upon said land, and was in the possession of it, the presumption should be indulged that the sheriff made and executed to him a deed therefor in accordance with the sale. [Brown v. Oldham, 123 Mo.

621, and authorities cited.]    And by his purchase of the interest of Province McCormick in the southeast quarter of the southeast quarter of section twenty-six, township fifty-seven, of range fifteen, under the attachment judgment in favor of Virginia Gipson and Stephen Gipson, as the deed from the sheriff to him did not correctly describe the land, he only acquired an equitable interest in the interest of said Province in this tract.

The contention that Lorena D. McCormick and her heirs acquired title to the Flore tract by adverse possession is untenable.    The only evidence to support this contention is that of one Joshua Teeters, who testified as a witness in plaintiff's behalf, to the effect that this forty was in the actual possession of Mrs. McCormick for fifty years, but it is clear from his testimony that he was not referring to the Flore land at all, but to an entirely different forty.    It is also clear from the facts disclosed by the record that neither Mrs. McCormick nor her children ever had any interest in this forty, nor did any person from whom plaintiff could have inherited have any interest in it.

As Stephen Gipson's possession of the land was by virtue of his marital rights, whatever title or interest he acquired in the land by deed or otherwise during the existence of such relation enured by operation of law to his wife.    [Hickman v. Link, 97 Mo. 482; McDonald v. Quick, 139 Mo. 484; Cockrill v. Hutchinson, 135 Mo. 67; Hinters v. Hinters, 114 Mo. 26; Dillinger v. Kelley, 84 Mo. 561; Picot v. Page, 26 Mo. 398.]    Hence, the statute of limitations did not run in his favor against her or her heirs.

Mrs. Manning married Stephen Gipson on June 19, 1863, and died August 8, 1878, leaving her husband surviving her, and also the plaintiff, and three other children born of the marriage with Gipson, one of whom died childless, leaving as heirs his father, Stephen Gipson, and two sisters of the whole blood, and nine brothers and sisters of the half blood, being Stephen Gip-

son's children by his first marriage, and the plaintiff by his mother's first marriage. Stephen Gipson died April 12, 1891.

It thus seems that plaintiff took by inheritance an undivided two-fifteenths interest, and the. other ten Gipson children combined an undivided twenty-one six- · tieths interest in the McCormick land, all subject to the life estate by the curtesy of Stephen Gipson, but acquired no interest whatever in the Flore land.

Counsel for plaintiff contend that when Stephen Gipson married appellant's mother he found her the owner of the McCormick land, and in the adverse possession of the Flore land, which adverse possession was continued by her husband and ripened finally into a fee simple title in her, and that plaintiff inherited an undivided interest in both the Flore and McCormick lands from his mother and deceased half-brother, and had acquired the remaining undivided interest by adverse occupancy for the statutory period. But, except as to an undivided two-fifteenths interest, which is the utmost which plaintiff could have acquired by inheritance, this contention is untenable, both because the record fails to show any fact or cir      '·nces which would set the statute in motion in his f. or against his cotenants in common, and for the fu.ther conclusive legal reason that no right of entry was in any of them until Stephen Gipson's life estate by the curtesy was terminated by his death on April 12, 1891, the earliest possible date at which the statute could begin to run, and this was less than ten years before this suit was begun. Therefore, the well-established principles of law respecting the statute of limitations are absolutely inconsistent with respect to plaintiff's contention, with the exception of the undivided two-fifteenths, unless the contention of defendant is correct, that Stephen Gipson was the sole and absolute owner of the Flore land in fee simple, and believing or assuming himself to be also the like owner of all the McCormick land, the plaintiff made a verbal

purchase from him about 1885, of the entire one hundred and sixty acres for the agreed price of $1,600.

But leaving out of consideration, for the moment, all title acquired by Stephen Gipson in the McCormick land, his ten surviving children combined inherited, as we have seen, an undivided twenty-one sixtieths interest. From the last Mrs. Gipson, and her deceased child by Gipson, so as to make them tenants in common with the plaintiff, there can be no question but that plaintiff could not, under the evidence in this case, acquire and has not acquired any part of the interest of his cotenants in common in the McCormick land, and being Stephen Gipson's vendee, he never acquired any title to the Flore land by virtue of the statute, and hence, unless Stephen Gipson acquired from plaintiff's mother before or after he married her, all her interest in the McCormick land, the plaintiff, aside from what he acquired by his verbal purchase from Gipson, is simply the owner of the undivided two-fifteenths of the McCormick one hundred and twenty acres, and of no interest whatever in the Flore land.

Moreover, if plaintiff's contentions were sound that Lorena D. McCormick was in adverse possession of the Flore land, claiming ownership thereof the same as of her own one hundred and twenty acres, such title as plaintiff would have thereto would come to him by inheritance the same as to the McCormick land proper, and he would be the owner of the undivided two-fifteenths of the whole one hundred and sixty acres and no more, and inasmuch as this action is brought under Revised Statutes 1899, section 650, to have plaintiff's title ascertained and defined, the court, on this contention of his counsel, would be compelled to declare that in no event is he interested to exceed two-fifteenths.

The evidence shows beyond any and all question that in 1885, or 1886, Stephen Gipson sold the land in question, one hundred and sixty acres including the Flore tract, to the plaintiff Manning, by a verbal sale

at the price of one thousand six hundred dollars, a deed to be executed therefor when the purchase-money was paid, and that plaintiff went into possession under said contract of purchase, and so remained up to the time of the institution of this suit. But it is well settled that the possession of a party entering upon land upon a verbal contract with the owner for its purchase is not in adverse or hostile possession as against his vendor, and although continued for ten years it does not bar the title. [Railroad v. Miller, 115 Mo. 158; Cole v. Roe, 39 Mo. 411; Mabary v. Dollarhide, 98 Mo. 198; Dollarhide v. Mabary, 125 Mo. 197.]

Plaintiff claims, however, that these decisions are not applicable, for the reason that if Stephen Gipson did sell to Manning he must have sold the whole undivided estate, as he had no right to divide the estate while in Manning's possession and sell the coal to another. That he could not have done so without the consent or acquiescence of Manning may be conceded, but we are unable to appreciate the force of plaintiff's contention under the evidence in this case, which tends strongly to show that he not only stood by and without objection saw Stephen Gipson sell the coal under the land to Thomas Wardell, but received part if not all of the purchase-money. And it is well settled that, if the owner of the property stands by and sees another sell it and says nothing when it was his duty to speak, and especially when he receives a part or all of the purchase-money, he will be estopped thereafter from claiming the property, for to do so would operate as a fraud upon the purchaser. [Skinner v. Stouse, 4 Mo. 93; Price v. Hallett, 138 Mo. 561; Bogart v. Bogart, 138 Mo. 419.] It must, therefore, follow that the deed from Stephen Gipson to Thomas Wardell, the defendant's grantor by mesne conveyances, had the effect of the severance of the coal and other minerals from the surface, and this is so, even if the plaintiff was the undisputed owner in

fee simple of the land.    [Morehead v. Frick Coke Co.,
170 Pa. St. 33.]

But conceding that plaintiff had an interest in the
land immediately before the execution and delivery of
the deed by Stephen Gipson to Wardell on the 20th of
May, 1887, for the coal and mineral products contained
and lying under the land in question, and that before
that time and continuously down to the commencement
of this suit on August 24, 1899, he was in open, notori-
ous, adverse and undisputed possession of the surface
of the land, yet the coal under the land was the subject
of a grant, and having been severed from the surface
on that by that deed (Wardell v. Watson, 93 Mo. 111;
Snoddy v. Bolen, 122 Mo. 487; Armstrong v. Caldwell,
53 Pa. St. 284), such possession and occupancy did not
constitute any possession or occupancy of the underly-
ing coal; hence defendant's right to claim the coal had
not become barred or extinguished by the statute of
limitations at the time of the institution of this suit.

Caldwell v. Copeland, 37 Pa. St. 427, was a con-
troversy between the claimant of underlying coal and
the owner of the surface, who claimed to own the coal
by adverse possession.  The trial court charged the
jury that the actual possession of the surface carried
with it the actual possession downward perpendicularly
through all the various strata.  The Supreme Court
said:

"This proposition would be unquestionable, if
there had not been a severance of the title to the mine-
right from that of the surface by the deed of the
twenty-seventh day of May, 1831, Caldwell to Greer.
But it is not true that after such a severance, whether
by reservation or grant, the possession of the surface
is possession of the underlying minerals.  It is a com-
mon occurrence in mining districts, not only that the
ownership of the soil is vested in one person, and that
of the mines in another, but there are frequently dis-

tinct ownerships of the minerals in the same land. Thus, one person may be entitled to the iron ore, another to the limestone; a third to one seam or stratum of coal, and a fourth to a distinct stratum. Title to any of these minerals, quite distinct from the title to the surface, may be shown by documentary evidence—or, in the absence of such evidence, or in opposition to it, title to them may be made out by proof of possession and acts of ownership under the statute of limitations. The acts of ownership, however, which constitute possession and confer title, must be distinct from such as are exercised over the surface.

"But whether Caldwell conveyed to Greer the coal mines in his land, or only granted a license to enter and take coals, depended on the construction of the deed above referred to of twenty-seventh May, 1831, and that was carefully considered and fully decided in the opinions reported in 7 Casey. It was then held that the deed was not a license, but a conveyance of the fee of the mine—that it was a grant of land and not of an incorporeal hereditament. That ruling is not questioned in the present case, and it is decisive against the plaintiff's action so far as it is founded on a possession of the surface. For no length of possession of the surface merely could divest the title granted by that deed. Adverse possession of the mine by the owners of the surface, for the statutory period, would avail as title, but the case was not ruled below on this ground, and, therefore, we do not consider whether the evidence made out such possession in the plaintiff and those under whom he claims. On the ground assumed, that possession of the surface for more than twenty-one years was title to the mine, the court was clearly in error.

"And in the second assignment, we think there was error. If there was no possession in Caldwell of the coal mine as a coal mine, and independently of his possession of the surface, then there could be no ques-

tion of adverse holding to submit to the jury." [Plummer v. Coal & Iron Co., 160 Pa. St. 483; Kingsley v. Hillside C. & I. Co., 144 Pa. St. 613; Armstrong v. Caldwell, 53 Pa. St. 289; Moreland v. Frick Coke Co., supra.]

In the case at bar there is no pretense that plaintiff was ever in possession of the coal strata underlying the land, and independently of his possession of the surface, so that there was no adverse holding of it by him.

Our conclusion is that the finding and judgment of the court are in accord with the views herein expressed and that the judgment should be affirmed.

We have not overlooked other points raised by counsel for plaintiff, but as on the questions passed upon and the conclusions reached necessarily result in an affirmance of the judgment, we have not thought it necessary to discuss them.

The judgment is affirmed. All concur.