CATHERINE FARRINGTON, PARKER M. WOODS, WILLIAM L. BECKTOLD, WALTER M. WARREN and LYMAN E. WARREN v. LLOYAL M. BURTON, ROSALYN BURTON, MARIE HALBRECHT, JOHN W. HAYS and SARAH R. HAYS, Defendants, JOHN W. HAYS and SARAH R. HAYS, Appellants.—No. 38911.—182 S. W. (2d) 186.

Division One, July 3, 1944.

Rehearing Denied, September 5, 1944.

*Geo. L. Vaughn* for appellants.

196

*Samuel H. Liberman* for respondents.

DALTON, C.—Action in equity for specific enforcement of a written contract for the sale of described real estate in St. Louis County. Both parties to the contract were "straws" for others, but the one who signed as seller was the record owner of the real estate. The individuals for whom the purchaser acted have joined with her as plaintiffs and all persons claiming a beneficial interest in the described real estate have been joined as defendants with the seller. Two of these defendants were in possession under an unrecorded deed, when the contract was signed, and specific enforcement was refused as to

their beneficial interest. Relief was granted against the other defendants, two of whom have appealed.

The described real estate, consisting of a 5-acre tract on East Big Bend road, lying opposite the Oak Hill Cemetery, was owned by James H. Sentenne, Jr. In November 1940, J. H. Gannon of the H. J. Gannon Realty Company and John W. Hays, who ▮▮▮ had desk room in Gannon's office, negotiated for the purchase of the property for $3000. On November 30, 1940, a contract was signed by Sentenne and wife as "sellers" and Marie Halbrecht as "purchaser." Marie Halbrecht, a stenographer in Gannon's office, signed as a "straw party" for Gannon and Hays at their request. Early in December 1940, Gannon sold his beneficial interest in the property to Hays for $400 and endorsed upon the contract a transfer of his rights thereunder to Hays. Thereafter, Hays orally arranged with Lloyal M. Burton and Rosalyn R. Burton (the latter a sister of Mrs. Hays) for a transfer of one-half of the tract to them. However, when the purchase from Sentenne was completed on December 16, 1940, Hays directed that the deed be made to Marie Halbrecht, who had signed the original purchase contract. On the same date, Hays had Marie Halbrecht sign an application to Oreon E. & R. G. Scott for a $3250.00 loan on the property, a note and deed of trust to secure the loan, and also a warranty deed with the date and name of grantee blank. He retained the warranty deed in the files. The Sentenne deed to Marie Halbrecht was recorded December 24, 1940 and the loan from Scotts was closed and a distribution made on January 2, 1941 by check for $1031.83 (the net proceeds) payable to Marie Halbrecht. A representative of the loan company testified that he dealt with Hays and knew that Marie Halbrecht was a "straw party."

On December 20, 1940, while the loan proceedings were pending, Hays reduced his contract with the Burtons to writing and acknowledged the receipt of $249.70 from them on the purchase price. The contract was signed by Hays and Burton and, after a description of the property, contained the following provision: "The above described property will be carried in the name of Lloyal M. Burton and Rosalyn R. Burton, his wife, until such time as the property has been surveyed; then the said Lloyal M. Burton and Rosalyn R. Burton will transfer by warranty deed to John W. Hays and Sarah R. Hays, his wife, the western 2½ acres of said property and retaining title to the eastern 2½ acres. It is also understood that the parties hereto agree and hereby assume each one-half of the annual taxes and interest accruing on said property. A first deed of trust in the sum of $3,250.00 will be retired in the same manner, one-half each."

On January 6, 1941, Hays obtained from the files the warranty deed theretofore signed by Marie Halbrecht and had her date it January 6, 1941 and fill in the names of Lloyal M. Burton and Rosalyn R. Burton, his wife, as grantees. No reference was made therein to

either deed of trust. Hays testified that he took this deed out to the Burtons on the same date and showed it to them and they asked him to record it. However, he retained it in his possession and did not record it until February 3, 1941, after Marie Halbrecht had signed a contract for the sale of the real estate. Before the deed was recorded, Sentenne had vacated the property and the Burtons had entered into possession and were making improvements. The evidence is quite conflicting as to the date the Burtons took possession, but they were in possession on February 3, 1941 when the contract sued on was executed.

The circumstances attending the execution of the contract are as follows: On January 23, 1941, Earl H. Bernine, superintendent of the Oak Hill Cemetery, learned that Sentenne had sold the property in question. From the records in the Recorder's office at Clayton, he learned that Marie Halbrecht was the purchaser. He then interested certain officers and stockholders of the corporation owning the Oak Hill Cemetery in acquiring the property, if satisfactory arrangements could be made. These parties did not want to buy the property for the cemetery, but only to control the property and protect the cemetery. Bernine hoped to acquire an interest, if they obtained the property. He found that Marie Halbrecht was employed by the H. J. Gannon Realty Company and, thereupon, contacted H. G. Rupp of the Rupp Realty Company. Rupp telephoned to Gannon on January 30, 1941 about having a buyer for the property, and was advised that "they" had acquired the property and that it was for sale for $5000, purchaser to pay the commissions. Before fixing a price, Gannon told Rupp he would have to confer with his partner, because he had sold his interest to his partner. After a conference with Hays in the presence of Marie Halbrecht, Gannon told Rupp that his partner said it was all right with him, and he gave Rupp the price and terms. Rupp advised Bernine and Bernine conferred with those he had interested in the property. They told him to go ahead and negotiate a purchase for $5250.00, including commissions. [189] Bernine notified Rupp and Rupp called Gannon and arranged for the contract to be signed Monday, February 3, 1941, 9:30 A. M. at Gannon's office. Hays was kept informed as to proceedings. Gannon told him the price agreed upon and when the contract was to be signed, and all was satisfactory to Hays. Hays knew when Rupp was to come with a signed contract and earnest money, and said "for him to come on in." Rupp appeared at Gannon's office with the earnest money and a contract signed by Catherine Farrington, a stenographer in his office, who had signed the contract as a "straw party" purchaser at the request of Rupp and Bernine, but on behalf of the purchasers who had furnished the earnest money and were intending to acquire the property. A "straw party" was used, because the interested parties did not then know how title was to be taken. When

the contract was presented to Gannon, Gannon had Marie Halbrecht sign the contract as "seller" and "record owner" and he signed as "agent for owner." Gannon and Rupp each retained one-half of the $500 earnest money paid on the contract. It was some half hour after this contract was signed before Hays filed for record the deed from Marie Halbrecht to the Burtons. Rupp discovered this deed of record on the following day and called Gannon who assured him that there would be no trouble, that only a half interest had been deeded to Burtons and that they were deeding the property back.

While the testimony of Marie Halbrecht (by deposition) and the testimony of Gannon (at the trial) are in fair agreement as to oral authorization by Hays for them to proceed with the contract to sell, Hays testified that he did not know that Rupp was to come in to have the contract signed on February 3, 1941. He testified that he told Gannon of Burton's interest and not to proceed or take the earnest money until he (Hays) got the consent of the Burtons; and that Gannon exceeded his authority in having the contract signed. Hays admitted that he said nothing to Marie Halbrecht about not going ahead; that he thought the price satisfactory and had so advised Gannon; that he talked to Burtons about selling the property; that they declined to sell; and that they inquired about their deed and demanded that it be recorded. The evidence indicates that Gannon and Marie Halbrecht signed the contract in good faith believing that they were complying with the wishes and directions of Hays. The deposition of Marie Halbrecht indicates that there was an understanding that Hays would get the deed from Burtons, and that, even after Hays knew the contract was signed, he thought he could get a deed from the Burtons. Gannon further testified that, after the contract was signed, Hays said it was all right, but that he would have to get a deed from his brother-in-law. While Gannon admitted that he knew of Burton's interest, even before title was taken by Hays in the name of Marie Halbrecht, Gannon thought Hays wanted the contract signed and Gannon didn't know until later that Hays was having trouble getting the deed from Burtons, although he then knew Burtons were in the premises. Gannon also knew Hays had the file with the warranty deed (with grantee in blank) signed by Marie Halbrecht, and Gannon thought she was still the record owner (as she was) when the contract of sale was signed. In any case, after the contract of sale was signed and after the Burtons refused to sell, Hays telephoned to Rupp and told him that he (Hays) was the owner of the property; that Gannon had no right to sell; and that "you are not going to be able to close your deal." Hays offered to get the earnest money back and further offered to cooperate and share the responsibility. The contract provided for the sale to be closed at Rupp's office on February 20, 1941 and, on that date, one of the plaintiffs and an attorney appeared with a cashier's check for the

amount provided by the contract to be paid, but neither Gannon, nor Marie Halbrecht appeared. Mrs. Hays knew nothing about the contract, dated December 20, 1940, between Hays and Burton, until the present suit was instituted, although she understood her husband had an interest in the property.

The court found that Hays knew of, participated in, and acquiesced in the making of the contract of sale by Marie Halbrecht; that he knew when the contract was to be entered into, and that thereafter he filed the deed to Burtons to prevent Marie Halbrecht from making a good and valid conveyance to plaintiffs and to deprive them of their rights under the contract. The court denied plaintiffs any relief against the Burtons, in so far as their beneficial interest in the property was concerned, but granted specific performance of the contract sued on to the extent of the rights of Hays and wife in the property. The court ordered an abatement of one-half of the purchase price. Only Hays and wife have appealed.

While the cause of action sued upon was one for the specific enforcement of a written contract for the sale of real estate, plaintiffs sought a recovery binding upon Hays and wife and Burton and wife on the theory of equitable estoppel and on the theory that plaintiffs acquired an interest in the real estate by contract with the record owner, prior to obtaining any knowledge of the claims of these other defendants. Plaintiffs alleged that said defendants were estopped to contend that Marie Halbrecht had no power, right or authority to enter into the contract sued upon, because they knew of the negotiations with plaintiffs and by and through Hays, who participated in, fixed and approved the terms and conditions of the sale, knew when the sale was to be consummated by a written contract, and took no steps to warn plaintiffs or advise them of any beneficial interest in the real estate. Plaintiffs further alleged that said defendants caused and permitted Marie Halbrecht to be and remain the record owner for their own convenience and purposes; that they refrained from recording their deed; that they caused and permitted plaintiffs to proceed upon the theory that Marie Halbrecht was the true owner, as shown by the records; and that after the contract had been signed and plaintiffs' rights had attached and the earnest money had been paid, said defendants caused the deed from Marie Halbrecht to Burton to be filed for record for the purpose of depriving plaintiffs of the rights acquired by them in the real estate under their contract of purchase.

Appellants (Hays and wife) assign error on the overruling of their demurrer to the petition and their motions to dismiss and contend that the petition was "insufficient to state a cause of action against appellants, or either of them, for the reason that said petition does not allege the necessary and essential facts to bring it within the rules of law governing equitable estoppel"; that "plaintiffs were not entitled to invoke equitable estoppel . . . under their petition, by

reason of the failure . . . either to plead or prove that they had been prejudiced or injured by reason of the refusal to carry out said contract of sale''; that the petition ''fails to allege specific loss or detriment to the party claiming equitable estoppel,'' or any ''change of status or injury''; and that proof of damage was wholly lacking. Prouse v. Schmidt (Mo. Sup.), 156 S. W. (2d) 919, 921; Grafeman Dairy Co. v. Northwestern Bank, 315 Mo. 849, 288 S. W. 359, 368; 19 Am. Jur. Estoppel, Secs. 84 and 85. As stated, the only damage alleged by plaintiffs was the signing of the contract in reliance upon the land records, the payment of the $500 of earnest money, and then being deprived of their rights by the filing of the deed to Burtons, that is, unless the estoppel be given effect. Plaintiffs further alleged that they had no adequate remedy at law.

In the trial of the cause appellants showed that respondents did not expect to make a profit on the purchase, go into the deal for that purpose, or plan to use the property for personal purposes. Appellants sought to show that if respondents did not acquire the property they would ''suffer absolutely no loss whatever,'' and counsel insisted that ''in specific performance cases . . . you have got to show damage, particularly when you base your right on estoppel, equitable estoppel. . . . You must show . . . you changed your position for the worse, which damages you. . . . One of the necessary elements which must be pleaded and proved is that they acted to their damage and the defendants stood by and saw them acting to their damage.''

''Courts assume, in almost every case in which action is brought to enforce specific performance of a contract for the sale of land or an interest therein, that money damages do not constitute an adequate remedy for the breach of such a contract, and take jurisdiction without the necessity of an actual showing that that is the case.'' 49 Am. Jur. Specific Performance, Sec. 92, p. 107; 58 C. J. 1025, Sec. 233. ''A specific tract of land . . . is regarded as 'unique and impossible of duplication,' 'a favorite and favored subject' of property, having 'a peculiar value,' and, hence, a purchaser may have specific performance of a contract to convey land irrespective of special facts showing the inadequacy of a legal remedy. 2 Restatement, Contracts, Sec. 360, p. 643 (2)''; Rice v. Griffith, 349 Mo. 373, 161 S. W. (2d) 220, 225. In such case it is sufficient to allege generally that plaintiffs' remedy at law is inadequate. No express allegation of money damages to plaintiff by reason of the breach of contract is required. For essential allegation, see, 49 Am. Jur., Specific Performance, Sec. 159, et seq.; 58 C. J. 1150, Sec. 465, et seq.; Houts Missouri Pleading & Practice, Vol. V, Sec. 2111 (Form). The petition sufficiently alleged and the proof showed damage to the purchaser by reason of having entered into the contract to purchase, and having paid the earnest money and assumed the obligations of the contract. Unless the estoppel is sus-

tained, the purchaser will suffer damage and lose rights acquired under the contract in the specifically described real estate, because the filing of the deed to Burtons has effectively prevented the transfer of good title to the purchaser. We hold that the failure to obtain the specific real estate described, if the estoppel is not sustained, is a sufficient damage to sustain the equitable estoppel both as to pleading and proof.

Appellants further contend that the evidence failed to show that the true facts concerning the title were unknown to respondents at the time the representations were made and respondents acted (Prouse v. Schmidt, supra); that respondents could not rely upon the records because they had knowledge casting doubt on the title and there were circumstances to put purchasers on inquiry, as indicating that possession was held adversely to the record title (Woodbury v. Connecticut Mut. Life Ins. Co., 350 Mo. 527, 166 S. W. (2d) 552, 555); and that possession of the property by the Burtons was notice and the equivalent of knowledge of all that would be learned by reasonable inquiry. Johnson v. Moore, 346 Mo. 854, 143 S. W. (2d) 254, 256; McBride Realty Co. v. Grace, 223 Mo. App. 588, 15 S. W. (2d) 957, 960.

When Bernine learned that Sentenne had sold the property and that someone else was in possession, he went to the Recorder's office at Clayton to find the name of the purchaser. He found the purchaser to be Marie Halbrecht, a stenographer in Gannon's office. When Rupp called Gannon and asked whether he had a Marie Halbrecht there, who owned the property in question, and if he had the property for sale, Gannon told him "they did acquire the property"; and that he would talk to his partner and see. He did talk to Hays in the presence of Marie Halbrecht and then stated the price and terms. There was also evidence that Gannon said he had sold his interest to a man who was there in the office; that this man bought it, because his relatives were interested; and that he would consult him. Hays knew all the facts, authorized and concurred in the sale and knew when the contract was to be signed. After it was signed, and he failed to get the Burtons' consent to sell, he blocked the consummation of the contract by filing the deed to the Burtons. It is on these facts that appellants say that respondents, through their agents Rupp and Bernine, knew of the Hays' interest and the Burtons' possession, and did not rely on any representation that Marie Halbrecht, the record owner, was the true owner. The court refused specific performance on the half interest beneficially owned by the Burtons, and no appeal was taken, so we are concerned only with the interest of Hays and wife. There is no evidence that any of the respondents or their agents knew of any interest or claim by Mrs. Hays and she didn't know of her own interest at the time. While respondents did know of the interest of Hays, there was evidence, believed by the trial court, that Hays authorized, consented to and participated in the contract

entered into by the "straw party" he had selected to hold the legal title. The evidence, therefore, concerning plaintiffs' knowledge of the interest of Hays in the real estate does not operate to prevent an estoppel, because Hays caused the contract to be executed and respondents to rely upon his acts and conduct indicating that Marie Halbrecht had the right to sell when they entered into the contract with her, and equitable estoppel applies against Hays. Prouse v. Schmidt, supra; Manning v. Kansas & Texas Coal Co., 181 Mo. 359, 376, 81 S. W. 140; 31 C. J. S. Estoppel, Secs. 89 and 90. There remains the question of whether the possession of the Burtons was notice to respondents of the claims of Mrs. Hays.

In the case of Woodbury v. Connecticut Mut. Life Ins. Co., supra, (350 Mo. 527, 166 S. W. (2d) 552, 555) it was said that "where the surrounding facts and circumstances indicate that the person in possession holds otherwise than through the record owner, we have uniformly held. that the purchaser from the record owner is charged with such knowledge as he can obtain by reasonable inquiry from the possessor." An inquiry directed to the Burtons would, no doubt, ▇▇▇ have reasonably disclosed that they were in possession and claimed the full legal title under an unrecorded deed from Marie Halbrecht. But the Burtons were not in possession as tenants of Hays or of Hays and wife. Would a reasonable inquiry have disclosed that Burton had made a contract with Hays by which it was agreed that the property would be carried in the name of Burton and wife, until the property could be surveyed and divided and that the Burtons would thereafter convey a one-half interest to Hays and wife, who would assume and pay one-half of the taxes, interest and outstanding mortgage? The Burtons could hardly have been expected to disclose such details of their personal business or contractual relations with Hays. Accordingly, we hold that possesesion by the Burtons under the unrecorded deed from Marie Halbrecht was not notice to respondents of the equitable interest of Hays and wife under the contract with Burton.

As stated, Sarah R. Hays had no knowledge of the facts upon which her equitable rights rested, until this suit was instituted, and appellants contend that she could not be estopped by silence during the negotiations, nor by a failure of the Burtons or Hays to file for record the Halbrecht-Burton deed before the 3rd day of February 1941. However, Sarah R. Hays' interest was not shown by the land records. At most it was only an equitable right existing against Burtons by reason of the contract between Burton and Hays. Respondents acted upon facts disclosed by the records and upon the conduct of Hays and entered into a contract in good faith with the record owner of the property. There is no suggestion in the evidence that any of the respondents had knowledge of Sarah R. Hays' interest under the Hays-Burton contract prior to the time their rights attached to the

real estate by reason of their contract with Marie Halbrecht, as authorized by Hays.

Appellants further contend that neither Marie Halbrecht nor Gannon had any authority to act for Mrs. Hays; that the contract they signed was not binding upon her; that it failed to comply with the statute of frauds (Sec. 3354, R.·S. 1939); and that "there was no mutuality of remedy between her and the plaintiffs," since "she could not have maintained an action against plaintiffs for specific performance of the contract in question." Assuming that these contentions are correct, it in nowise affects respondents' right to specific enforcement of their contract to buy the property, since they acquired the property under contract, without any notice of the alleged equitable rights of Mrs. Hays and when her rights, if any, against either the record owner (Marie Halbrecht) or the parties in possession (the Burtons) were not shown by the records or even known to Mrs. Hays herself. In addition, respondents have not proceeded against Mrs. Hays upon the theory that the contract of Marie Halbrecht was authorized by or binding upon Mrs. Hays, but upon the theory that she had no record title to the real estate and they had no knowledge of her interest therein and they dealt with the record owner and, having acquired rights in the property under the circumstances shown, their rights are superior to the rights of Mrs. Hays.

Appellants finally contend that "specific performance would not lie against property in which there was an estate by the entirety under the circumstances of this case," because neither party alone, "by his or her independent act, or failure to act, could render a contract in reference thereto made by a third party enforceable by specific performance." Hernandez v. Prieto, 349 Mo. 658, 162 S. W. (2d) 829, 831; Wilson v. Fower (Mo. App.), 155 S. W. (2d) 502. Mrs. Hays was not a party to the contract of December 20, 1940, which was signed by her husband alone. She furnished none of the consideration. The contract was not of record and was not necessarily beneficial, since it required the grantees in the proposed deed to assume the payment of one-half the annual taxes and interest and one-half of the amount secured by the deed of trust. The amount of the encumbrance was in excess of the sale price of the property on November 30, 1940. Mrs. Hays had no knowledge of the contract and had not consented to or accepted it, when the contract of sale was signed by Marie Halbrecht. Acceptance of the contract could not be presumed. See, Bunker v. Fidelity Nat. Bank & Trust Co., 335 Mo. 305, 73 S. W. (2d) 242, 248; 37 C. J. S., Gifts, Sec. 65, p. 860. It is unnecessary, however, to determine the extent of her rights, if any, under the contract, because respondents had no knowledge of such rights when they entered into a contract with the record ▮▮▮ owner to purchase the property. Under such circumstances, although husband and wife were named as purported beneficiaries of the Burton contract, Mrs.

Hays acquired no additional rights by reason of the fact that the contract provided for a deed to husband and wife. Respondents were entitled to relief against both husband and wife by reason of their contract with the record owner. The decree, as entered, granting specific enforcement of the contract sued upon, as against the claims of appellants, is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.