**JEFFERSON SAVINGS & LOAN ASSOCIA-TION, a Corporation, Plaintiff-Respondent,**

v.

**Adrian AGUADO, Olga Aguado and Esther Moser, Defendants-Appellants,**

**ARMAND L. LIND, INC., a Corporation, and Harry Chadwell, Third-Party Defendants.**

**No. 52737.**

Supreme Court of Missouri,
Division No. 1.

March 11, 1968.

Everett Hullverson, Hullverson, Richardson & Hullverson, Carroll C. Gilpin, Tralles, Hoffmeister & Gilpin, Eugene Portman, Portman & Portman, St. Louis, for appellants.

Henry Ebenhoh and Walter S. Berkman, St. Louis, for respondent.

Henry F. Luepke, Jr., Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for respondents (third party defendants).

HYDE, Special Commissioner.

Action for specific performance of a contract to sell certain real estate in the City of St. Louis. Defendants filed a counterclaim against plaintiff for $25,000.00 compensatory damages and $100,000.00 punitive damages, based on filing lis pendens by plaintiff. Defendants also filed a third party petition against Armand L. Lind, Inc., the real estate broker in the transaction and its employee, Harry Chadwell, to have the contract of sale declared void for alleged fraud and misrepresentation in obtaining it. The court found all issues for plaintiff, dismissed defendants' counterclaim and third party petition, ordered a deed executed to plaintiff by defendant Moser or on failure to do so ordered title vested in plaintiff. Defendants have appealed from this decree.

Defendants Aguado were owners of residence property in St. Louis where they lived with defendant Esther Moser, the sister of defendant Olga Aguado. In 1964, the Aguados conveyed the property to Miss Moser and this deed was recorded. Miss Moser lived with the Aguados and worked in Mr. Aguado's typesetting company. They said they conveyed title to her on the advice from a real estate company that it would be good business to do so. However, on January 11, 1965, the Aguados signed a document called a listing contract designated as "Authority to Sell Real Estate", giving exclusive authority for six months to Armand L. Lind, Inc., hereinafter called Lind, to sell their residence for $70,000.00. Lind also had authority to sell the adjoining property of Mrs. Ada Jenkins and put up a sign advertising these two properties were for sale. The area was zoned for multiple housing and Lind's salesman, Harry Chadwell, who dealt with the Aguados, told them they could get more if the buyer could build multiple units. The Lind sign stated the property could be used for multiple family housing. It also appears there were nursing homes in the area. The Aguados were members of the River Bluffs Association with 20 or more other neighbors, which was for the purpose of maintaining the neighborhood. Over a period of 14 years Mr. Aguado said he attended about one meeting a year. The last meeting he attended concerned noise made by barges on the river. There were no dues and no restrictions on members selling. Mrs. Aguado said she knew the organization did object to building multiple dwellings. However, the Aguados said Chadwell told them that none of the neighbors then objected to selling for use for multiple housing but Chadwell denied this. Chadwell said he had no knowledge of any objection until three or four weeks after the listing contract was signed when the owner adjoining Mrs. Jenkins' property talked to him about moving the sign. After that he said he told Aguado some of the neighbors objected to use for an apartment but that others did not.

Mr. A. W. Kuennke, president of plaintiff, saw the Lind sign and contacted Chadwell. He wanted both properties (Aguado and Jenkins) to have enough land for condominium units he planned. Option contracts were prepared and signed by Mrs. Jenkins on May 10, 1965, to sell for $60,000.00 and by Miss Moser on May 17, 1965, to sell for $40,000.00, each stating it was subject to acceptance by the owner of the other property. $100.00 was paid for each option. After obtaining the listing contract, Lind had learned that Miss Moser was the record owner. On July 8, 1965, another and final contract was signed by Miss Moser and plaintiff providing that on or before July 16, 1965, purchaser would deposit $5,000.00 with Lawyers Title Company and that sellers would deposit a warranty deed, to be held in escrow, on or before that date, the balance of the purchase price to be paid on the closing date, August 30, 1965. It was also stated the contract was subject to obtaining building permits and no injunctions being filed prior to closing. The reason for this provision about injunctions was that the neighbor adjoining the Jenkins property was expressing opposition to the sale. There was a similar contract with Mrs. Jenkins who did later convey her property to plaintiff. Miss Moser signed both contracts for the Aguado property at the direction of and in the presence of the Aguados. Mr. Kuennke had been informed by Chadwell that she was a straw party and who the owners were. Defendants claim that Chadwell and Lind became the agents of plaintiff and were acting for plaintiff in the transaction but the court found against this claim. Other facts will be stated in connection with our rulings.

The court made the following findings of fact: That the Aguados were the real owners of the real estate; that Miss Moser was vested with legal title for the convenience of the Aguados; that Chadwell was the agent and employee of Lind; that the Aguados signed the listing contract authorizing Lind to sell their real estate; that Miss Moser signed the written contract to

sell the real estate for $40,000.00 with the knowledge and consent of the Aguados; that the sale was to be closed on or before August 30, 1965; that plaintiff has deposited all of the purchase price with Lawyers Title Company and it is available to defendants upon closing the sale; that plaintiff fully performed its contract obligation and at all times acted in good faith; that the purchase price is fair and reasonable; and that no damages alleged in defendants' counterclaim were sustained.

The court further stated its conclusions that Chadwell and Lind were not employed by or acting for plaintiff; that plaintiff was not responsible for alleged false representations, if any, of Chadwell and Lind; that by the condition of no injunction being filed prior to closing, in the July 8, 1965, contract signed by Miss Moser, defendants were put on notice that some adjoining property owners were opposed to the sale by defendants for the use proposed; that plaintiff was entitled to specific performance; and that defendants' counterclaim should be dismissed. The court ordered a conveyance by Miss Moser within 10 days and also dismissed defendants' third party petition. The court further ordered, if the deed was not made, title "is hereby vested in plaintiff free and clear of any and all interests, rights and claims of defendants."

The Aguados raised the issue of the statute of frauds, Sec. 432.010, RSMo, V.A. M.S., claiming it applied because they did not sign the option contract of May 17, 1965, or the final contract of July 8, 1965, which fixed the closing date as August 30, 1965; and because the listing contract they did sign authorized sale for a larger amount than the amount finally fixed by the contracts signed by Miss Moser. They did not raise this issue by their pleadings but made oral objections to evidence, on the authority of Smith v. Hainline, Mo.Sup., 253 S.W. 1049, 1052. However, we think there are good reasons why this defense is not available to the Aguados. In the first place they did not hold the legal title and they are not

required to make a deed. Moreover, the holder of the legal title did sign the contract. More important, however, plaintiff's petition alleged and the evidence showed facts which are the basis for equitable estoppel against them. We applied equitable estoppel in a somewhat similar situation in Farrington v. Hays, 353 Mo. 194, 182 S.W. 2d 186, where the title was held by a straw party who signed a contract as seller with the consent of Hays who later sought to avoid it. In Hubbard v. Slavens, 218 Mo. 598, 117 S.W. 1104, equitable estoppel was applied to vest title to land, citing Kirk v. Hamilton, 102 U.S. 68, 77, 26 L.Ed. 79, in which it was said it seems "too late to contend that the title to real estate cannot be passed by matter *in pais* without disregarding the Statute of Frauds." In Prouse v. Schmidt, Mo.Sup., 156 S.W.2d 919, we said: "There is no doubt but that the title to real estate * * * may pass by an equitable estoppel." We set out therein grounds from which such an estoppel arises; and for the reasons hereinafter stated we consider that compliance with all of them has been shown in this case. See 28 Am.Jur.2d 735, Estoppel and Waiver, Sec. 88; 31 C.J.S. Estoppel § 150, page 740; Annotation, 50 A.L.R. 685; see also Jones Store Co. v. Dean, U.S.C.A. 8th, 56 F.2d 110, citing Dickerson v. Colgrove, 100 U.S. 578, 580, 25 L.Ed. 618. It is said in the Dickerson case, which vested title by equitable estoppel: "The vital principle is, that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectation upon which he acted. Such a change of position is sternly forbidden."

■ Plaintiff alleged and its evidence showed that the Aguados listed the land for sale with Lind and authorized and directed Miss Moser to execute the agreements for its sale including the final contract of July 8, 1965; that plaintiff made a final contract for the adjoining Jenkins' property at the same time Miss Moser made the final contract with plaintiff, completing

the purchase from Mrs. Jenkins, relying on having final contracts for both properties; that plaintiff had expended money for surveys and architect services relying on acquiring title to both tracts; and that it cannot develop its planned condominium units without using both properties. Plaintiff's president did not know Miss Moser and had never spoken to her at the time she signed the option contract as record owner. The Aguados were present when Miss Moser signed each contract and directed her to sign them. We hold that the conduct of the Aguados amounted to a representation that Miss Moser was entitled to and would convey the title; and that plaintiff reasonably relied thereon, acted on it and in doing so changed its position for the worse. Therefore, defendants now are estopped from asserting any claim of invalidity under the statute of frauds.

 The Aguados claimed to have been induced by false statements about neighbors having no objections. However, the court found (and the record supports its finding) that the Aguados were "charged with the knowledge that some of the adjoining property owners were opposed to the sale of defendants' real estate and the use thereof for building condominium units" when they had Miss Moser sign the July 8, 1965, contract. Furthermore, the Aguados' testimony on this issue is not convincing in view of the fact that their property and that of Mrs. Jenkins was advertised for such use for almost six months by a four-by-eight-foot sign on the Jenkins' property; during which time, according to them, no one objected to them and they did not talk to any neighbors about it. The reasonable inference from all the evidence is that at least the Aguados knew of the opposition to the sale by the neighbor adjoining the Jenkins' property before the contract of July 8, 1965, was signed. We hold the court was correct in finding the sale should not be avoided on the basis of alleged false representations.

It follows from these rulings that defendants' claim of error in the dismissal of their third party petition against Lind and Chadwell is without merit. Likewise without merit is their claim of error for refusing to admit evidence of a petition by owners of land, in the area of the properties herein involved, to obtain zoning changes to prevent multiple dwellings. There is nothing in the record to show it was prepared before the contracts herein involved were made or when it was signed and filed.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the court.

All concur.